FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
10/26/2023 3:37 PM
KATINA WATSON
CLERK OF THE COURT
Andrea I Gutierrez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**CASE NO:** D-202-CV-2023-08368

**CANDICE ZYBURO and**
**CATHERINE ZYBURO,**

**Plaintiffs,**

**v.**

**NORTH AMERICAN COMPANY FOR**
**LIFE AND HEALTH INSURANCE,**

**Defendant.**

**CERTIFICATION REGARDING**
**ARBITRATION UNDER LOCAL RULE LR2-603**

**COME NOW** Plaintiffs Candice Zyburo and Catherine Zyburo, by and through their counsel of record DeNiro Law, LLC, (Kate P. Jones, Esq., and Vanessa L. DeNiro, Esq.), and hereby certify that:

____ This case is subject to referral to arbitration under Local Rule LR2-603. No party seeks relief other than a money judgment and no party seeks an award in excess of $25,000.00, exclusive of punitive damages, interest, costs, and attorney's fees.

_X_ This case is not subject to referral to arbitration under Local Rule LR2-603 because at least one party seeks relief other than a money judgment and/or at least one party seeks an award in excess of $25,000.00, exclusive of punitive damages, interest, costs, and attorney's fees.

I further certify that the pleadings in this case are not closed, pursuant to the meaning under the Guidelines of Local Rule LR2-603.

Respectfully submitted,

DENIRO LAW, LLC

By: /s/ *Kate P. Jones*
 Kate P. Jones, Esq.
*Attorney for Plaintiffs*
P.O. Box 45104
Rio Rancho, NM 87174
kate@denirolaw.com
Tele: 505.977.8975

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
10/26/2023 3:37 PM
KATINA WATSON
CLERK OF THE COURT
Andrea I Gutierrez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**CASE NO:** D-202-CV-2023-08368

**CANDICE ZYBURO and**
**CATHERINE ZYBURO,**

**Plaintiffs,**

**v.**

**NORTH AMERICAN COMPANY FOR**
**LIFE AND HEALTH INSURANCE,**

**Defendant.**

**VERIFIED COMPLAINT FOR BREACH OF LOYALTY, BREACH OF DUTY OF DISCLOSURE, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, UNJUST ENRICHMENT, NEGLIGENT MISREPRESENTATION, FRAUDULENT MISREPRESENTATION, VIOLATION OF THE NEW MEXICO INSURANCE CODE, BREACH OF CONTRACT, REQUEST FOR CONSTRUCTIVE TRUST, AND VIOLATION OF THE UNFAIR TRADE PRACTICES ACT**

**COME NOW** Plaintiffs, Candice Zyburo and Catherine Zyburo, by and through their attorney of record, DeNiro Law, LLC (Vanessa L. DeNiro, Esq. and Kate Jones, Esq.), and hereby file this Complaint for Breach of Loyalty, Breach of Duty of Disclosure, Breach of Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Negligent Misrepresentation, Fraudulent Misrepresentation, Violation of the New Mexico Insurance Code, Breach of Contract, Request For Constructive Trust, and Violation of the Unfair Trade Practices Act, and as grounds therefore state:

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Candice Zyburo, is an individual residing in Nassau County in the State of New York. Candice Zyburo is also the Personal Representative of the Estate of Charles Dennis Zyburo and a survivor beneficiary of the Fixed Index Annuity.

2. Plaintiff, Catherine Zyburo, is an individual residing in Bernalillo County, New Mexico. Catherine Zyburo is also a beneficiary and owner of the Fixed Index Annuity issued effective October 18, 2016.

3. Defendant, North American Company for Life and Health Insurance, is a corporation existing under the laws of the state of Iowa with its principal place of business in West Des Moines, Iowa.

4. The insured party who passed away, Charles Dennis Zyburo (hereafter "Decedent") died on February 18, 2021. At the time of death, Decedent was domiciled in Bernalillo County, New Mexico.

## III. FACTUAL BACKGROUND

5. On or about October 18, 2016, Defendant issued a Fixed Index Annuity (hereafter "Annuity") to Catherine Zyburo and the Decedent, as joint owners. The Annuity issued is governed by an Individual Single Premium Deferred Annuity Contract (hereafter "Annuity Contract").

6. At the time of issuance, Catherine Zyburo (hereafter "Catherine") and the Decedent were married.

7. After issuance of the Annuity, the survivor beneficiary designations were as follows: 100% to the surviving spouse as the primary beneficiary and as contingent, 25% each to Gregory Zyburo, Rosemarie Zyburo, Renee Zyburo, and Candice Zyburo.

8.    The Premium deposited at the time of purchase was $600,742.06.

9.    Catherine and Decedent also purchased a Death Benefit Rider.

10.    The cost of the Rider was 1.2% of the Accumulated Value per year.

11.    Upon the 5th Contract Anniversary, the Death Benefit Rider entitled Catherine Zyburo and Decedent to 140% of the Premium.

12.    Since issuance, Defendant received approximately $40,000.00 as payment for the cost of the Death Benefit Rider.

13.    On or about August 14, 2018, Defendant was notified of Decedent and Plaintiff Catherine Zyburo's impending divorce.

14.    On or about August 16, 2018, nearly a year **before** the divorce was finalized, Defendant purportedly sent a Divorce Settlement Form on a single occasion, requiring it be completed by both Catherine and Decedent.

15.    Upon information and belief, this Divorce Settlement Form was sent to an incorrect address and was not received by either Catherine or Decedent. See **Exhibit A:** *Returned Mail from NAC.*

16.    On August 27, 2018, Catherine Zyburo filed a Verified Petition for Dissolution of Marriage in the Second Judicial District Court, under Case Number D-202-DM-2018-02685.

17.    On July 19, 2019, Catherine and the Decedent were officially divorced.

18.    Pursuant to Article III(1)(E) and (2)(E) of the Marital Settlement Agreement (hereafter "MSA"), the Annuity was to be divided equally. See **Exhibit B:** *Marital Settlement Agreement in Pertinent Part.*

19.    The Decedent's Last Will and Testament was executed on January 27, 2020.

20.     The Decedent's Will provided for a specific gift, stating, "An annuity from North American Company policy number 8000299481 **my portion all goes to Candice Melanie Zyburo**." (emphasis added). See **Exhibit C:** *Decedent's Last Will and Testament in Pertinent Part.*

21.     On or about January 29, 2020, Decedent submitted an Annuity Beneficiary Change Request to Defendant, seeking to designate Candice Zyburo as sole primary beneficiary. See **Exhibit D:** *Annuity Beneficiary Change Request in Pertinent Part.*

22.     This attempted beneficiary change was not accepted by Defendant, but upon information and belief, Defendant never notified Decedent of this decision.

23.     Given the totality of circumstances, between the MSA, the Decedent's Will, and the attempted beneficiary change, the intentions for the account were unambiguous: 50% to Catherine and 50% to Candice.

24.     The Decedent passed away on February 18, 2021.

25.     Candice Zyburo filed an Application for Informal Probate of Will and Appointment of Personal Representative on May 27, 2021 in the Second Judicial District Court under case number D-202-PB-2021-00411. The Court then appointed Candice as Personal Representative of the Estate in an Order of Informal Probate of Will and Appointment of Personal Representative, entered on June 24, 2021.

26.     On or about October 5, 2021, counsel for the Personal Representative sent a Demand Letter to Defendant, requesting information and documentation related to the Annuity. See **Exhibit E:** *October 5, 2021 Demand Letter in Pertinent Part.*

27. After multiple inquiries went completely ignored or only partially answered, a Subpoena Duces Tecum, was served upon Defendant on June 23, 2022 in probate case number D-202-PB-2021-00411 for all documentation related to the Annuity.

28. Defendant did not respond to the subpoena until two months later on August 23, 2022.

29. Upon finally receiving documentation in response to the subpoena and after further communication with Defendant, it was discovered that the Defendant never divided the Annuity after the divorce and Defendant expressed uncertainty as to the proper survivor beneficiaries.

30. The Personal Representative, through counsel, continued to diligently and regularly communicate with Defendant to ascertain the Defendant's exact reason for withholding distribution of proceeds and to determine a solution for distribution to occur. This correspondence was primarily with a Claims Specialist named Joseph Crawford, who was assigned to the matter.

31. Counsel for the Personal Representative made multiple requests of Defendant to provide a formal, written position statement to identify with specificity the precise root cause that led Defendant to place a hold on distribution. See **<u>Exhibit F:</u>** *September 7, 2022 Email to Claims Specialist.* On the rare occasions that Defendant chose to respond, it failed to provide any coherent explanation for the hold.

32. On September 13, 2022, approximately a year and a half after Decedent passed away, Defendant belatedly provided the Personal Representative with Indemnification

Agreements for all conceivable beneficiaries to execute. Defendant still neglected to provide an explanation as to why the Indemnification Agreements were even necessary.

33.    While coordinating signatures for the Indemnification Agreements, counsel for the Personal Representative contacted Claims Specialist Crawford to confirm several aspects of the Annuity.

34.    Specifically, the Personal Representative's counsel requested information regarding the base value of the Annuity, as well as the existence and value of any applicable Riders. See **Exhibit G:** *September 19, 2022 email to NAC.*

35.    Defendant's Claims Specialist responded, stating that, "The death benefit value is $654,921.21. There is no death benefit rider on the contract." See **Exhibit H:** *September 20, 2022 email from NAC.*

36.    Counsel for the Personal Representative replied, requesting the Claims Specialist check again and provided documentation sent by Defendant in response to the subpoena that corroborated the existence of a Death Benefit Rider. See **Exhibit I:** *September 29, 2022 email to NAC.*

37.    On September 30, 2022, the Defendant's Claims Specialist emailed admitting to providing materially inaccurate information and advised that, "[T]his contract does have a GMDB rider. This rider has a benefit base value of $833,940.79. If the listed beneficiary(ies) decide to elect the rider payout, they must all agree to choose the rider payout which must be divided over 5 years." See **Exhibit J:** *September 30, 2022 Email from NAC Claims Specialist.*

38.    It is important to note that i) the difference between the benefit base amount and the rider payout is very substantial, a discrepancy of approximately $179,000.00; ii) the Claims

Specialist's instructions for electing the rider payout were sent over a year and a half after the Decedent's death; and iii) there was no mention of or reference to IRC 72(s).

39.    In a separate email exchange, clarification and confirmation was sought as to how the rider payout would operate. The Claims Specialist reaffirmed that if the Plaintiffs "... choose the 5 year payout then the value would be based on the rider value of $833,940.79. If they choose another settlement option then the value would be based on the base benefit value of $654,921.21." See **Exhibit K:** *Additional Email Correspondence on September 30, 2022.*

40.    Despite being advised that 4 of the 5 Indemnification Agreements required by Defendant had been signed and ongoing efforts were being made to obtain the fifth signature, Defendant filed an Interpleader Action in the US District Court for the Eastern District of New York (Case No. 1:23-cv-1140) on February 10, 2023. No notice of commencement of the interpleader, nor copies of the filings were provided to counsel for the Personal Representative.

41.    On February 22, 2023, the fifth and final Indemnification Agreement had been signed and all executed agreements were promptly submitted to Defendant. The Interpleader was voluntarily dismissed shortly thereafter.

42.    With the understanding that issues preventing distribution had been resolved and relying on Defendant's previously stated instructions, Plaintiffs filled out a Claimant's Statement form on or about March 29, 2023, each electing the Rider payout option over a period of 5 years.

43.    Plaintiffs received a letter dated April 12, 2023, stating for the very first time that the Death Benefit Rider could not be elected purportedly because that settlement option was, "... only available for one year from date of death" and went on further to advise that, "Lump sum is

the only settlement option available at this time." See **Exhibit L:** *April 12, 2023 Correspondence from NAC.*

44. Curiously, the very same April 12, 2023 Letter goes on to state that,

> "This contract has a Death Benefit Rider that will pay the Benefit Base as of the date of death though [sic] a series of equal periodic payments over 5 years at an interest rate of 0%. Your portion of this Benefit Base is $416,970.40. This Benefit Base Amount will be divided over the 5 year period based on a series of equal periodic payments based on a 0% interest rate. If you choose to elect this option all beneficiaries must agree to and elect this option in order to receive this Benefit Base. Since this product offers the Death Benefit Rider that will pay the benefit base if elected, we must receive all requirements from all beneficiaries prior to proceeding with payment."

45. The contradictions in this letter cannot be overstated; on one hand advising the Benefit Base cannot be elected, while simultaneously providing detailed instructions for making that exact election.

46. The April 12, 2023 Letter provided no further information or explanation as to why the Death Benefit Rider payout option could not be elected beyond 1 year from date of death.

47. Counsel for the Plaintiffs contacted Defendant multiple times for a formal explanation, only to be given vague references to an undisclosed section of the Internal Revenue Code ("IRC") and that the IRS would not allow for the 5 year payout option.

48. On or about June 1, 2023, Catherine Zyburo submitted a complaint to the New Mexico Office of Superintendent of Insurance ("OSI").

49. In its Response dated July 13, 2023, Defendant finally provided (despite numerous requests) a detailed explanation of its position and identified the IRC 72(s) as the

reason for the 5 year payout no longer being an available option. See **Exhibit M:** *NAC Response to OSI Complaint.*

50.     Catherine Zyburo submitted a Reply on or about August 8, 2023, disputing the Defendant's interpretation of and reliance upon IRC 72(s). The Reply expressed a litany of frustrations and the efforts made to overcome the absurd hurdles imposed by Defendant. See **Exhibit N:** *OSI Reply.*

51.     OSI's purview was limited to document review and facilitating dialogue, and therefore closed the file on August 8, 2023, stating that no further action would be taken by their office.

52.     Counsel for Plaintiffs sent Defendant a Final Demand Letter on September 5, 2023. This was done as a final, good faith attempt to resolve matters prior to commencing litigation.

53.     Defendant responded to the Final Demand Letter on September 29, 2023, which simply restated the contents of its OSI Response.

54.     IRC Section 72(s) states,

> "Required distributions where holder dies before entire interest is distributed (1) In general A contract shall not be treated as an annuity contact for purposes of this title unless it provides that— (A) if any holder of such contract dies on or after the annuity starting date and before the entire interest in such contract has been distributed, the remaining portion of such interest will be distributed at least as rapidly as under the method of distributions being used as of the date of his death, and (B) if any holder of such contract dies before the annuity starting date, the entire interest in such contract will be distributed within 5 years after the death of such holder."

55. Despite Defendant's representations, IRC Section 72(s) does not contain any language related to equal payments or a specific number of payments; only that full distribution will occur within 5 years after the date of death.

**III. ARGUMENT**

**COUNT I: BREACH OF DUTY OF LOYALTY**

56**.** Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

56. An insurer assumes a fiduciary obligation toward an insured in matters pertaining to the performance of obligations in the insurance contract. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, *Sanchez v. Allstate Ins. Co.*, 2010 N.M. App. Unpub. LEXIS 79, 15 (Ct. App. Feb. 3, 2010) (internal citations omitted).

57. As a general matter, a fiduciary duty is a duty of loyalty. *McWilliams v. Jensen*, 2015 N.M. App. Unpub. LEXIS 173 (Ct. App. Apr. 6, 2015) (internal citations omitted). Since a fiduciary is obliged to act primarily for another's benefit in matters connected with such undertaking, a fiduciary breaches this duty by placing his interests above those of the beneficiary. *Id.*

58. Defendant's breaches of its fiduciary duty of loyalty include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

b.  Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration; and

c.  Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout.

59.    Each and all of the above stated acts and omissions constitute breach of Defendant's fiduciary duty to loyalty to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

60.    Defendant's breach of its fiduciary duty of loyalty with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT II: BREACH OF DUTY OF DISCLOSURE**

61.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

62.    An insurer assumes a fiduciary obligation toward an insured in matters pertaining to the performance of obligations in the insurance contract. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, *Sanchez v. Allstate Ins. Co.*, 2010 N.M. App. Unpub. LEXIS 79, 15 (Ct. App. Feb. 3, 2010) (internal citations omitted).

63.    A fiduciary is required to fully disclose material facts and information relating to the fiduciary relationship even if the one to whom the duty is owed has not asked for the information. *Valerio v. San Mateo Enters.*, 2017-NMCA-059, 400 P.3d 275.  The duty of disclosure is a hallmark of a fiduciary relationship. *Id.*

64. Defendant's breaches of its fiduciary duty of disclosure include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Failing to disclose to original owners of the Annuity, including Catherine Zyburo, that Defendant required the Divorce Settlement Form to be executed in order to divide the Annuity;

b. Failing to disclose to the original owners of the Annuity, including Catherine Zyburo, that Defendant had not divided the Annuity, despite Defendant having actual knowledge that the owners were divorced and the Annuity was divided pursuant to the Marital Settlement Agreement;

c. Failing to disclose to the original owners of the Annuity, including Catherine Zyburo, that Defendant rejected Decedent's Annuity Beneficiary Change Request, in which Decedent sought to designate Candice Zyburo as sole primary beneficiary of his portion of the Annuity;

d. Failing to timely disclose basic information and documentation related to the Annuity, despite repeated, unequivocal requests for disclosure from Catherine Zyburo, Candice Zyburo and the Undersigned;

e. Failing to timely disclose Defendant's reason for withholding distribution of proceeds, despite repeated and unequivocal requests for disclosure from Catherine Zyburo, Candice Zyburo and the Undersigned; and

      f.   Failing to timely disclose that IRC 72(s) allegedly renders Plaintiff's election of the Death Benefit Rider only available to Plaintiffs for one year from Decedent's death.

65.    Each and all of the above stated acts and omissions constitute breach of Defendant's fiduciary duty to disclose to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

66.    Defendant's breach of its fiduciary duty to disclose with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT III: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

67.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

68.    Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement. *Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, 111 N.M. 57, 801 P.2d 639. Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. *Id.*

69.    Defendant's breaches of the covenant of good faith and fair dealing include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

      a.   Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

b. Failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration; and

c. Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout and deprive Plaintiffs of the same.

70. Each and all of the above stated acts and omissions by Defendant have deprived Plaintiffs of the benefit of the Annuity Contract. Therefore, each and all constitute breaches of the implied covenant of good faith and fair dealing as to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

71. Defendant's breach of the implied covenant of good faith and fair dealing with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT IV: UNJUST ENRICHMENT**

72. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

73. The elements of unjust enrichment are: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Sloane v. Rehoboth McKinley Christian Health Care Servs.*, 2018-NMCA-048, 423 P.3d 18.

74. As a result of Defendant's bad-faith refusal to timely disclose matters materially affecting the Annuity to Catherine Zyburo, Candice Zyburo, and the Undersigned, Defendant has

intentionally prolonged the amount of time in which the Annuity generates revenue. Defendant has been unjustly enriched as a result of the aforementioned acts and omissions and at the expense of Plaintiffs.

75.    As a result of Defendant's misrepresentations and refusal to communicate in good-faith regarding Plaintiffs' ability to elect the death benefit rider, Defendant has knowingly benefitted in ways, including, but not limited, to the following:

      a.  Retaining the original owners', including Catherine Zyburo's, $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider with no consideration conferred on the owners or beneficiaries;

      b.  Retaining the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout that Plaintiffs are entitled to pursuant to the Annuity Contract; and

      c.  Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant.

76.    Each and all of the above stated acts and omissions constitute unjust enrichment of Defendant at the expense of Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

77.    Defendant has been wrongfully enriched at the expense of Plaintiffs, for which they seek restitution within the jurisdictional limits of this Court.

**COUNT V: NEGLIGENT MISREPRESENTATION**

78.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

79.    Negligent misrepresentation requires a failure to exercise ordinary care in obtaining or communicating a statement, or an intent that the plaintiff receives and be influenced by the statement where it is reasonably foreseeable that the plaintiff would be harmed if the information conveyed was incorrect or misleading. *Cobb v. Gammon*, 2017-NMCA-022, 389 P.3d 1058.

80.    Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s) in order to induce Plaintiffs to rely on the same.

81.    Each and all of the above stated acts and omissions constitute negligent misrepresentation by Defendant to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

82.    As a result of Plaintiffs' reliance on Defendant's negligent misrepresentations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VI: FRAUDULENT MISREPRESENTATION**

83.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

84.    A fraudulent misrepresentation claim requires that the injured party show that the other party (1) made a misrepresentation of fact; (2) with the intent to deceive and to induce the injured party to act upon it; (3) and upon which the injured party actually and detrimentally relies. *State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, 321 P.3d 128

85.    Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s) in order to deceive Plaintiffs and to induce Plaintiffs to rely on the same.

86.    Each and all of the above stated acts and omissions constitute fraudulent misrepresentations by Defendant on Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

87.    As a result of Plaintiffs' actual and detrimental reliance on Defendant's false representations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VII: VIOLATION OF THE NEW MEXICO INSURANCE CODE: NMSA § 59A-16-6**

78.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

88.    Section § 59A-16-6 of the New Mexico Insurance Code provides that no person shall make or issue, or cause to be made or issued in any manner, any written or oral statement misrepresenting the terms, conditions, benefits or advantages of any policy for the purpose of inducing or attempting or tending to induce any other person to lapse, forfeit, surrender, borrow against, retain, exchange, convert or otherwise deal with or dispose of any policy.

89.    Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s), and therefore the statute's affect on the terms, conditions, benefits and/or advantages of the Annuity, in order to to induce Plaintiffs to rely on the same, causing Plaintiffs to lapse, forfeit and surrender their right to elect the Death Benefit Rider.

90. Each and all of the above stated acts and omissions constitute a violation of NMSA § 59A-16-6 by Defendant on Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

91. As a result of Plaintiffs' actual and detrimental reliance on Defendant's false representations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VIII: BREACH OF CONTRACT**

92. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

93. In order to prove breach of contract, a plaintiff will be required to prove that (1) there is a contractual obligation; (2) there was a breach of such; and (3) the breach resulted in damages. *Alderete v. City of Albuquerque*, 2015 N.M. App. Unpub. LEXIS 48 (Ct. App. Feb. 23, 2015).

94. Defendant's breach of the Annuity Contract include, but are not limited to, Defendant's refusal to allow Plaintiffs to elect the Death Benefit Rider which Plaintiffs are contractually entitled to and paid $40,000.00 in consideration to Defendant in exchange for.

95. Each and all of the above stated acts and omissions constitute breach of contract by Defendant. Plaintiffs reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

96. As a result of Defendant's breaches of contract, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT IX: REQUEST FOR CONSTRUCTIVE TRUST**

97. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98. A constructive trust is imposed to prevent the unjust enrichment that would result if the person having the property were permitted to retain it. *Tartaglia v. Hodges*, 2000-NMCA-080, 129 N.M. 497, 10 P.3d 176. The circumstances where a court might impose a constructive trust may involve actual or constructive fraud, duress, undue influence, abuse of a confidence, breach of a fiduciary duty, or similar wrongful conduct. *Id.* More generally, such a trust can be imposed based upon the breach of any legal or equitable duty, or the commission of a wrong. *Id.*

99. As alleged in the preceding sections, Defendant has intentionally prolonged the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned.

100. In order to prevent further unjust enrichment of Defendant, this Court should impose a constructive trust on the Annuity funds.

101. Plaintiffs respectfully request that the Court grant Plaintiffs' request for constructive trust and that the Court grant further relief as is warranted.

**COUNT X: VIOLATION OF THE UNFAIR TRADE PRACTICES ACT**

102. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

103.    According to the Unfair Trade Practices Act, unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful. NMSA § 57-12-3.

104.    Defendant's violations of the Unfair Trade Practices Act include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

      a. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

      b. Intentionally failing to timely disclose (i) Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and (ii) Death Benefit Rider payout and the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration, resulting in a gross disparity between the value received by Plaintiffs and the price paid.

105.    Each and all of the above stated acts and omissions constitute violations of the Unfair Trade Practices Act by Defendant. Plaintiffs reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

106.    As a result of Defendant's violations of the Unfair Trade Practices Act, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court as well as attorneys fees and costs.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendants and for the following:

a.  Special and actual damages as alleged herein and/or proven at trial;

b.  Prejudgment interest in the maximum amount allowed by law;

c.  Prejudgment interest from the date of the injury through the date of judgment, at the maximum rate allowed by law;

d.  Post judgment interest at the maximum rate allowed by law;

e.  As a result of Defendant's malicious, willful, reckless, wanton, oppressive, and/or in bad faith actions, punitive damages in an amount to be determined by the Court at trial;

f.  Attorneys fees and costs incurred in the prosecution of this action; and

g.  Any and all such other and further relief, whether in law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

DENIRO LAW, LLC

By: /s/ *Kate P. Jones*
 Kate P. Jones, Esq.
*Attorney for Plaintiffs*
P.O. Box 45104
Rio Rancho, NM 87174
kate@denirolaw.com
Tele: 505.977.8975

EXHIBIT
A

North American Company
for Life and Health Insurance
Since 1886

A member of the Sammons Financial Group

August 16, 2018

CATHERINE A ZYBURO

NIXIE 871 FE 1260 0008/24/18
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
BC: 50325090505 *1755-01485-24-05

Re: Annuity Number 8000299481

Dear Catherine A Zyburo,

On August 14, 2018, we were notified of a pending divorce action to which you are a party. We are writing to provide you with necessary information regarding the effect of a divorce action on your above referenced contract number.

Upon being notified of a divorce action involving one of North American's annuity contract owners, North American's standard procedure is to prevent the movement of any funds until we receive appropriate documentation regarding how the annuity contract is to be handled. This restriction is placed upon the annuity contract for the protection of all parties involved.

The enclosed Divorce Settlement Form, signed by both spouses in front of a notary, is required in order to remove this restriction from your account. Once this documentation is received in good order, North American Company will either appropriately distribute the funds as instructed, and/or remove the restriction if the funds are not being divided.

In the case where we have been notified of a divorce action involving one of North American's annuity contract owners and the parties involved cancel or do not proceed with the action, we require a letter including the notarized signature and date by both parties advising that there is no longer a divorce action and/or the parties have reconciled.

If you have questions, please call us toll-free at 1-866-322-7069. We are available Monday through Thursday from 7:30 am to 5:00pm (CST) and Friday from 7:30 am to 12:30 pm (CST). A service professional within the Customer Contact Department will be happy to take your important call.

Sincerely,

Customer Correspondence
North American Company for Life and Health Insurance

Enclosure (1): Divorce Settlement Form 17432Z

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
7/16/2019 7:43 AM
James A. Noel
CLERK OF THE COURT
Ashley Padilla

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

CATHERINE A. ZYBURO,

Petitioner

vs. No. D-202-DM 2018-02685

CHARLES DENNIS ZYBURO,

Respondent.

## MARITAL SETTLEMENT AGREEMENT

The parties in the above-captioned matter stipulate as follows:

## ARTICLE I: RECITALS

1. This agreement is between Catherine A. Zyburo (Petitioner) and Charles Dennis Zyburo (Respondent).

2. Petitioner currently lives in Albuquerque, New Mexico, and Respondent currently lives in Albuquerque, New Mexico.

3. Petitioner is represented by Allen Giles, Esq, and the Respondent is represented by Matthew Sanchez.

4. The parties were married on November 15, 1975.

5. There are no minor children born of this matter. There are no other children expected to be born within this marriage.

6. The parties no longer live together due to inherently different dispositions and a resultant state of incompatibility.

7. The parties reached this agreement as to their rights and obligations, and a division of their property. Their agreement has been reduced to writing for approval by the Court.

8. Respondent and Petitioner intend, and it is the purpose of this agreement, to make a complete and final agreement of all their claims and to finalize their agreement as to the division of the property, both real and personal, owned by either of them.

**FOR THE REASONS SET FORTH ABOVE**, and in consideration of the mutual covenants and provisions of the parties hereto, Respondent and Petitioner agree as follows:

## ARTICLE II: EFFECTIVE DATE

This agreement shall become binding upon the parties and their respective legal representatives, successors and assigns immediately following the granting of the *Final Decree* in their action for *Dissolution of Marriage*, provided that the provisions of this agreement are approved by the District Court in that action. If the *Final Decree* or approval of the District Court is not granted, the provisions of this agreement have no effect. Petitioner and Respondent agree that a *Final Decree* may be entered in this matter and that the *Dissolution of Marriage* should be granted on the grounds of incompatibility.

## ARTICLE III: DIVISION OF PROPERTY

A compromise distribution of the community property is as follows:

1.   Petitioner shall receive as her sole and separate property:

    A.   All property owned by her prior to the marriage, and all such items being in her possession at the time of the signing of this agreement;

    B.   Gifts given to her and items inherited by her during the marriage, all such items being in her possession;

    C.   All savings and checking accounts solely in her name;

    D.   The 2005 Honda CRV as her sole and separate property, subject to

any indebtedness thereon;

E. One half of the North American Company annuity, valued as of the date of divorce, with an approximate value of $658,155.67;

F. The Brookhaven 401(k) in her name, valued as of the date of divorce, with an approximate value of $122,000.00, less $33,500 to be given to Husband;

G. The Nebraska Football tickets and wife shall be responsible for all costs associated with the tickets;

H. The house located at 7008 Easton Pl NW in Albuquerque, subject to any indebtedness, encumbrances, or interests by individuals not a party to this case;

I. All life insurance policies insuring Petitioner's life are the sole and separate property of Petitioner;

J. The personal property items listed as Wife's on the attached list of items;

K. All other personal and household items that are in her possession at the time of the signing of this Agreement, including but not limited to all of her personal affects such as clothing, unless listed as Husband's property on the attached list of items.

2. Respondent shall receive as his separate property:

A. All property owned by him prior to the marriage and all such items

being in his possession at the time of the signing of this agreement;

B. Gifts given to him and items inherited by him during the marriage, all such items being in his possession;

C. All savings and checking accounts solely in his name;

D. The 2018 Honda CRV as his sole and separate property, subject to any indebtedness thereon;

E. One half of the North American Company annuity, valued as of the date of divorce, with an approximate value of $658,155.67;

F. $33,500.00 from Petitioner's Brookhaven 401(k);

G. The house located at 10005 Silverton Dr NW in Albuquerque, subject to any indebtedness thereon;

H. All life insurance policies insuring Respondent's life are the sole and separate property of Respondent;

I. The personal property items listed as Husband's on the attached list of items;

J. Husband shall receive the Allstate Settlement Funds as his sole and separate property;

K. All other personal and household items that are in his possession at the time of the signing of this Agreement, including but not limited to all of his personal affects such as clothing, unless listed as Wife's property on the attached list of items.

3. 6246 Nueva Espana Rd NW Property: The parties own a residence located at

# Will for Adult with Children

*[Do not simply print this form and then fill in the blanks by hand. A will that is a mixture of printed and handwritten text will not be valid. Use your word processor to add the required information, and delete all bracketed instructions, including this one. In the Signature portion, however, you may leave the blank lines in place, where you and your witnesses will enter the required information by hand when the will is signed and witnessed.]*

## Will of __Charles Dennis Zyburo____________________

I, Charles Dennis Zyburo, a resident of Bernalillo County, State of New Mexico, declare that this is my will.

**1. Revocation.** I revoke all wills that I have previously made.

**2. Marital Status.** I am single

**3. Children.** I have the following natural and legally adopted child(ren):

| Name | Date of Birth |
| --- | --- |
| Candice Melanie Zyburo | [redacted] |
| Gregory Scott Zyburo | [redacted] |
| Rosemarie Christa Zyburo | [redacted] |
| Renee' Michelle Zyburo | [redacted] |

**4. Specific Gifts.** I make the following specific gifts:

An annuity from North American Company policy number 8000299481 my portion all goes to Candice Melanie Zyburo.

I leave $5,000.00 to Each Grandchild

[redacted]

[redacted]





EXHIBIT
D

# Annuity Beneficiary Change Request

CLEAR FORM

North American Company for Life and Health Insurance
Mail: P.O. Box 79905, Des Moines, IA 50325-0905
For questions, contact the Claims Department at 877-880-6367.
Completed forms may be faxed to: 877-639-7538.

## I. Contract Holder Information

Annuity Contract Number: 8000 299 481

Owner's Name (first, middle initial, last): Charles Dennis Zyburo | SSN: [redacted]

Joint Owner's Name (if applicable) (first, middle initial, last) | SSN

Trust or Corporation Name (if current owner is a Trust or Corporation) | Tax ID Number

Owner's Mailing Address: [redacted]

City: [redacted] | State: [redacted] | ZIP: [redacted] | Phone Number: [redacted]-7844

## II. Beneficiary Change Information

**I hereby revoke all previous beneficiary designations and change the beneficiary(ies) according to Sections IV through VII of this form.**

**The new beneficiary designations are**

☒ Revocable ☐ Irrevocable (If no box is checked, the beneficiary designation will be revocable):

- Irrevocable beneficiary designations require the signature of the irrevocable beneficiary in Section VIII. If you choose an irrevocable beneficiary, written consent is required before any future changes can be made.
- If a Trust is listed as a beneficiary, the Certification of Trust Agreement (form 19306Z) must accompany this form.
- If a Charitable Trust is listed as a beneficiary the Certification of Charitable Trust (26742Z) must be attached.
- If this form is completed and signed by an Attorney-in-Fact, the Certificate of Power of Attorney Form (19656Z) must accompany this form.
- In order to meet IRS requirements, if there are joint owners, death proceeds are payable upon the death of the first owner. The Death Benefit proceeds will be payable to the owner's primary beneficiary. If the surviving owner is not the owner's primary beneficiary, they will not be entitled to the proceeds upon the death of the first owner.
- If there are joint annuitants, death proceeds are payable upon the death of the second annuitant.
- For an owner driven contract, death proceeds are not payable upon the death of an annuitant therefore, no beneficiary designation is needed.
- This Beneficiary Change Request form meets the Written Notice requirement defined in the annuity contract.
- If you want to designate more beneficiaries than this form allows, fill out the required information on a separate sheet of paper that is signed and dated according to Section VIII of this form. Attach it to this form.
- Please designate if you want the beneficiary designation to be Per Stirpes or Per Capita. If an election is not made then by default it will be Per Capita. Per Stirpes designations require a listing of the children on a separate sheet of paper that is signed and dated. The list must include the children's names, addresses, phone numbers, dates of birth, and social security numbers.
  - Per Stirpes definition: A common way of distributing proceeds where if one or more beneficiaries has died, his or her children share equally in his or her share of the proceeds.
  - Per Capita definition: Proceeds are split amongst the beneficiaries that survive the owner/annuitant. If one of the beneficiaries does not survive the owner/annuitant than the remaining beneficiaries receive the proceeds
- In order to distribute future annuity proceeds accurately and according to your wishes, provide the current phone number and address for each beneficiary.
- In order to make the requested change we request that the following information be provided: Beneficiary name, SSN, relationship code, and Percentage of Proceeds.

## III. Relationship Code Information

Please use the codes below to fill out the Relationship Code Information in Sections IV through VII.

| | | | | | |
|---|---|---|---|---|---|
| 01 – Spouse | 04- Mother | 06 – Daughter | 08 – Sister | 14 – Stepdaughter | 20 – Granddaughter | 33 – Niece |
| 03 – Father | 05 – Son | 07 – Brother | 13 – Stepson | 19 – Grandson | 32 – Nephew | 55- Other |

## IV. Owner's Primary Beneficiary Designation

In the event of the owner's death, Death Benefit proceeds are payable to the owner's primary beneficiary. If there are joint owners, the Death Benefit is payable upon the first death.

Beneficiary's Name (first, middle initial, last)

**Candice Melenie Zybura**

| SSN | Relationship Code | Birth Date (mm/dd/yyyy) | % of Proceeds* | |
|---|---|---|---|---|
| ▓▓▓▓▓▓ | 06 | ▓▓▓ 12 | 100 % | ☐ Per Stirpes ☐ Per Capita |

Beneficiary's Mailing Address (must be completed)

| City | State | ZIP | Phone Number |
|---|---|---|---|
| ▓▓▓▓ | ▓▓ | ▓▓ | ▓▓▓▓-4775 |

Beneficiary's Name (first, middle initial, last)

N/W

| SSN | Relationship Code | Birth Date (mm/dd/yyyy) | % of Proceeds* | |
|---|---|---|---|---|
| | | | | ☐ Per Stirpes ☐ Per Capita |

Beneficiary's Mailing Address (must be completed)

| City | State | ZIP | Phone Number |
|---|---|---|---|
| | | | |

Beneficiary's Name (first, middle initial, last)

N/W

| SSN | Relationship Code | Birth Date (mm/dd/yyyy) | % of Proceeds* | |
|---|---|---|---|---|
| | | | | ☐ Per Stirpes ☐ Per Capita |

Beneficiary's Mailing Address (must be completed)

| City | State | ZIP | Phone Number |
|---|---|---|---|
| | | | |

Trust (or other non-living entity, e.g., corporation, estate, etc)

| Tax Identification Number | Trust Date | % of Proceeds* |
|---|---|---|
| | | |

*% of Proceeds must equal 100%. Certification of Trust Agreement (form 19306Z) must be attached.

Is this a Charitable Trust? ☐ Yes ☒ No
If this is a Charitable Trust the Certification of Charitable Trust (form 25742Z) must be attached.

## VIII. Signatures

**Changes will not be valid unless signature section is completed.**

**IMPORTANT NOTICES REGARDING SIGNATURE REQUIREMENTS**

*If this transaction is subject to a community property interest, we strongly recommend that you obtain your spouse's signature on the line below to document his/her consent to this transaction. States that recognize community property interests in property held by married persons include Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin.

You understand and agree that the Company may presume that no community property interest exists if you have not obtained your spouse's signature below. Further, you understand and agree that the Company has no duty to inquire further about any such community property interest. As a result, you agree to indemnify and hold the Company harmless from any consequences relating to community property interests and this transaction.

Note: The term "spouse" includes domestic partner or other partner as permitted by civil union, domestic partnership or similar law.

**If the current owner resides in the state of MA, the signature of a disinterested witness is required. A disinterested person is described as anyone other than a designated beneficiary. An agent/representative may not sign as a disinterested witness.

| | | | |
|---|---|---|---|
| Owner | Charles Dennis Zybura Charles Dennis Zybura | Date | 1-29-2020 |
| Joint Owner | | Date | |
| Irrevocable Beneficiary (if any) | | Date | |
| *Current Owner's Spouse | | Date | |
| **Disinterested Witness | | Date | |

DENIRO LAW, LLC

6300 Riverside Plaza Ln. Suite #100.
Albuquerque, New Mexico 87120
P.O. Box 45104
Rio Rancho, New Mexico 87120
PH: (505) 977-8975
Fax: (505) 750-9836
vanessa@denirolaw.com
www.denirolaw.com
Licenced in the State of New Mexico
Bianca Duran, Associate Attorney
bduran@denirolaw.com

**October 5, 2021**

***Sent Via: fax***
**North American Company**
**ATTN: Claims Department**
**Annuity Service Center**
**P.O. Box 79905**
**Des Moines, IA 50325**
**Fax: 877-586-0249**

**Re: Charles Zyburo, deceased; Contract No. 8000299481**

To Whom It May Concern,

Please be advised that this firm represents Candice Zyburo, the Court appointed Personal Representative of the Estate of Charles Zyburo (hereafter Charles), regarding the above-referenced matter. For the reasons described below, the full benefit value of the subject Annuity should be divided, with fifty (50%) percent disbursed to Charles' ex-wife, Catherine Zyburo, and 50% payable to Charles' Estate.

This letter ultimately serves as a good faith effort to resolve the subject dispute without the need for court intervention, and to gain a better understanding of the information and documentation North American has on file. Accordingly, we are optimistic that an expeditious resolution can be achieved so long as there is a clear understanding of the force and effect of the enclosed divorce filings, which were executed subsequent to the creation of the Annuity.

**FACTUAL HISTORY**

A written agreement is a valid and binding contract enforceable by law so long as the terms of the agreement are legal and consistent with New Mexico State law and, if applicable, the Statute of Frauds. Breach of contract is a legal cause of action and a type of civil wrong in which a binding agreement is not honored by one or more of the parties to the contract by non-performance or non-compliance with terms of the contract. Moreover, when a third party interferes with an existing contractual relationship between other parties, that is another legal cause of action described as tortious interference.

In order to demonstrate there is a tortious interference with an existing contract, the aggrieved party (Plaintiff) claiming a third party (Defendant) contractual interference must demonstrate that; the Defendant had knowledge of the contract; (2) performance of the contract was denied; (3) Defendant played an "...active and substantial part in causing Plaintiff to lose the benefits of his contract; (4) damages flowed from the breached contract; and (5) MFA Defendants induced the breach without justification or privilege to do so." *Clockman v. Marburger*, 2017 WL 1018819, at *2 (N.M. Ct. App. Feb. 15, 2017).

Here, the MSA is a legally binding contract between Charles and Catherine. Therefore, any third-party interference with the terms of that contract constitutes tortious interference under the law when the above elements are met. Moreover, Catherine is bound by the agreement and she must comply with the agreed upon terms which state that the annuity benefits were to be split in 50/50 between Catherine and Charles. Therefore, per the law and facts discussed herein, Charles estate must be distributed his rightful 50% share of the annuity benefits pursuant to the terms of the MSA.

**INFORMATION REQUESTED**

- When was the subject Annuity issued?
- Identify the current value of the Annuity
- Identify the currently designated survivor beneficiaries
- When and how will the Annuity benefits be distributed

**CONCLUSION**

The provisions of the MSA state that the benefits were to be split equally between Charles and Catherine. Additionally, the contents of the January 27, 2020 Will clearly indicate that 50% of the Annuity should be paid to Catherine Zyburo and the remaining 50% to Candice Zyburo. Therefore, the 50% share of Charles Zyburo's Annuity benefits must be distributed to his Estate. Moreover, as the Court appointed Personal Representative of Charles' Estate, Candice is an appropriate person to make these inquiries.

Accordingly, we ask North American Company to provide any and all information related to the subject Annuity, specifically including the above referenced items as well as it's basis for denying proper distribution of benefits to Charles Zyburo's Estate. This will help determine the

Personal Representative's next course of action. If North American Company is unwilling or the exchange of information is otherwise not coordinated within ten (10) business days, we will be required to commence an action in Court, where we will request all remedies available to the Estate of Charles Zyburo including attorney fees and costs.

Very truly yours,

*Bianca M. Duran*
Bianca  M. Duran, Esq.

CC:  candice zyburo
Enclosures:
- June 24, 2021 Order Appointing Personal Representative
- July 12, 2021 Letters Testamentary
- August 27, 2017 Verified Petition for Dissolution of Marriage
- July 15, 2019 Marital Settlement Agreement
- July 19, 2019 Stipulated Final Decree of Dissolution of Marriage
- January 27, 2020 Last Will and Testament of Charles Zyburo



EXHIBIT F

James Peck <jp@denirolaw.com>

# Charles Zyburo Annuity Policy - Position Statement for Withholding Funds

**James Peck** <jp@denirolaw.com> Wed, Sep 7, 2022 at 7:48 PM
To: jcrawford@sfgmembers.com, "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Mr. Crawford,

I appreciate you reaching out to me this morning. While we await copies of the various Indemnification Letters (reflecting the agreement of 50% to Catherine, 50% to Candice), Vanessa directed me to inquire about one more request.

Based on our previous conversations and after reviewing the documents provided in response to our subpoena, we have a reasonable understanding of North American's hesitation in distributing survivor benefits. However, we have not yet received any official, written explanation as to why the funds are being withheld; no specific discrepancy or provision/requirement under the policy has been identified to substantiate North American's decision to place a hold on disbursement.

While we recognize and respect North American's diligence in ensuring funds are released to the appropriate parties, we are not comfortable conveying its perspective and reasoning without some formal explanation. Accordingly, we request your legal department to prepare a written position statement, detailing North American's assessment of the policy's beneficiary designations and requirements for resolution (i.e. Indemnification Letters and/or Court Order). Again, I am confident there is a mutual understanding in place, but this will considerably help our efforts in articulating the situation to Renee and, should it become necessary, the Judge presiding over the probate case for Mr. Zyburo's Estate.

We sincerely appreciate any assistance you can provide in facilitating this request with the legal department and hope to hear from you soon.

Thank you,

James Peck
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.



James Peck <jp@denirolaw.com>

# Questions on Policy Value - 8000299481 Zyburo

**James Peck** <jp@denirolaw.com> Mon, Sep 19, 2022 at 2:29 PM
To: "Crawford, Joseph" <JCrawford@sfgmembers.com>, "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Joseph,

Thank you again for providing the Indemnification Letters. We are in the process of gathering all the signatures. Still hoping to hear back from the legal department with a formal, written explanation - I understand that may take longer but wanted to send a quick note.

In the meantime, I wanted to confirm a few topics related to the policy itself:

What is the base value of the policy?
Were any add-ons purchased, such as death benefits rider?
If so, what is the value of the benefit(s); and
In what fashion and to whom will it be paid?

Thank you,

James Peck
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.



EXHIBIT
H

James Peck <jp@denirolaw.com>

## Questions on Policy Value - 8000299481 Zyburo

**Crawford, Joseph** <JCrawford@sfgmembers.com> Tue, Sep 20, 2022 at 2:58 PM
To: James Peck <jp@denirolaw.com>, "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Hi James,

The death benefit value is $654,921.21. There is no death benefit rider on the contract.

Thank you

**Joe Crawford** | Claims Specialist

Claims | Sammons Financial

8300 Mills Civic Parkway | West Des Moines, IA 50266 | 877-880-6367

jcrawford@sfgmembers.com | SammonsFinancial.com

[Quoted text hidden]

The information contained in this message is confidential, protected from disclosure and may be legally privileged. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, distribution, copying, or any action taken or action omitted in reliance on it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by replying to this message and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.





James Peck <jp@denirolaw.com>

## Questions on Policy Value - 8000299481 Zyburo

**James Peck** <jp@denirolaw.com> Thu, Sep 29, 2022 at 2:03 PM
To: "Crawford, Joseph" <JCrawford@sfgmembers.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Joe,

We respectfully request that you double check this information, or provide a much more thorough explanation. In response to our subpoena, North American submitted over 430 pages of documents related to the Policy. Included in that paperwork was a letter dated April 28, 2021 (attached) which directly contradicts your last email.

The letter does align with your statement that the Death Benefit value is $654,921.21. However, it goes on to say that the contract **does** have a Death Benefit Rider and lists the Benefit Base as $833,940.79. I acknowledge that we are not experts on North American's policies and procedures and are eager to hear your explanation for this discrepancy, but you simply saying "there is no death benefit rider on the contract" is patently false and completely unacceptable.

Additionally, the attached letter indicates that North American will begin the escheatment process if all requested documents are not received within 6 months. Please confirm that no such action has not and will not start.

Finally, I am still awaiting a formal, written explanation from the legal department describing their decision to withhold distribution. I am sure you would agree that we and our client have been extraordinarily patient throughout this entire process, but frustrations are mounting, so please do what you can to facilitate these requests in a timely fashion.

Thank you,

James Peck
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.
[Quoted text hidden]

**April 28, 2021 Notice from North American.pdf**
217K





DENIRO LAW
LLC

EXHIBIT
J

James Peck <jp@denirolaw.com>

## Questions on Policy Value - 8000299481 Zyburo

**Crawford, Joseph** <JCrawford@sfgmembers.com> Fri, Sep 30, 2022 at 9:01 AM
To: James Peck <jp@denirolaw.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Hi James,

Thank you for bringing this to my attention. I apologize for the wrong information, this contract does have a GMDB rider. This rider has a benefit base value of $833,940.79. If the listed beneficiary(ies) decide to elect the rider payout, they must all agree to choose the rider payout which must be divided over 5 years.

The escheatment process is was put on hold for this contract back in January.

I will follow up with our legal department today regarding your request for a formal explanation.

Thanks for all your work on this James. Please let me know if there is anything else I can help with.

[Quoted text hidden]
[Quoted text hidden]

DENIRO LAW LLC

EXHIBIT K

James Peck <jp@denirolaw.com>

## Questions on Policy Value - 8000299481 Zyburo

**James Peck** <jp@denirolaw.com> Fri, Sep 30, 2022 at 9:48 AM
To: "Crawford, Joseph" <JCrawford@sfgmembers.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Joe,

I appreciate you getting back to me, but please understand that this reduces our confidence in North American, which has a fiduciary duty to provide complete and accurate information; this was a $179,000.00 discrepancy that we had to bring to your attention. Our client cannot help but wonder if any other details have been overlooked. In the meantime, just a few follow-up questions to ensure we have a correct understanding of the current situation and the process moving forward.

1. Will any of this impact the Indemnification Letters at all? They currently reflect the scenario of 50% to Catherine and 50% to Candice, with no specific dollar amounts identified. My hope is that we will not have to restart this cumbersome task of collecting various signatures.

2. Assuming we gather all the necessary signatures on whatever version of the Indemnification Letter that may be required (based on question above), Catherine and Candice then have the options of: A) receiving a one-time, lump sum for their respective 50% of the Policy's base value $654,921.21 (approx $327,460.60 each); or B) they can elect for the rider payout, which would still represent a 50/50 split, but based on the larger amount of $833,940.79 with payments drawn out over 5 years ($833,940.79 / 2 = $416,970.40; then divided by 5 yrs, Catherine and Cadice would each receive approx $83,394.08 annually over a 5 year period)

- Essentially, they have to decide if they want less money, quicker or more money, but over a longer period of time. Is that an accurate assessment?

3. Once the paperwork is completed and an election has been made, is there an estimate on when funds will be disbursed? If they elect the GMDB rider, is there an additional waiting period or steps before receiving the first of 5 installments?

4. Do you require hardcopies of the executed Indemnification Letters? The plan right now is for all the signed/notarized letters to be sent back to my office first so that they can be submitted to North American all at once, either by email or certified mail. Please let me know if this will be an issue, we are just wanting to avoid the risk of 5 different envelopes floating around in the mail.

Thank you,

James Peck
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.
[Quoted text hidden]



James Peck <jp@denirolaw.com>

## Questions on Policy Value - 8000299481 Zyburo

**Crawford, Joseph** <JCrawford@sfgmembers.com> Fri, Sep 30, 2022 at 11:04 AM
To: James Peck <jp@denirolaw.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Hi James,

Thank you for your email. Again I apologize for the incorrect rider information.

1. the death benefit/rider value does not impact the indemnification agreements.

2. You are correct and your calculations are correct. If they choose the 5 year payout then the value would be based on the rider value of $833,940.79. If they choose another settlement option then the value would be based on the base benefit value of $654,921.21.

3. Once the election is made and the claim paperwork is received in good order then there is just the standard processing time which is typically 3-5 days. There is no waiting period for the first payment.

4. We do not need the originals of the indemnification agreements. We can accept a copy and you can email them to me for handling.

Please let me know if there is anything else I can help with.

Thank you

**Joe Crawford** | Claims Specialist

Claims | Sammons Financial

8300 Mills Civic Parkway | West Des Moines, IA 50266 | 877-880-6367

jcrawford@sfgmembers.com | SammonsFinancial.com

**From:** James Peck <jp@denirolaw.com>
**Sent:** Friday, September 30, 2022 8:48 AM
**To:** Crawford, Joseph <JCrawford@sfgmembers.com>
**Cc:** Vanessa L. DeNiro <vanessa@denirolaw.com>
**Subject:** Re: [EXTERNAL] Questions on Policy Value - 8000299481 Zyburo





April 12, 2021

CATHERINE ZYBURO
10005 SILVERTON DR NW
ALBUQUERQUE, NM 87114

Re: Charles D Zyburo, Deceased
Contract-8000296481-Non Tax-Qualified

Dear Ms. Zyburo:

On behalf of North American Company for Life and Health please accept our sincere condolences which we wish to extend to you and your family. The documents listed below are required prior to settlement of the claim:

1. Completion of the Claimant Statement by the Beneficiary (enclosed)
2. The settlement option selected was only available for one year from date of death. Lump sum is the only settlement option available at this time.

If you are sending in documents separate from the Claimant Statement please ensure the number is indicated on your paperwork to ensure efficient handling of your documents.

Please be aware that the Contract mentioned above is a Non-Qualified Annuity Contract. Your portion of the Death Benefit as of 2/18/2021 is $327,460.60. The amount of $20,052.29 is reportable as a taxable distribution on form 1099-R. Please consult your tax professional relating to any questions about the taxable amount.

This contract has a Death Benefit Rider that will pay the Benefit Base as of the date of death though a series of equal periodic payments over 5 years at an interest rate of 0%. Your portion of this Benefit Base is $416,970.40. This Benefit Base Amount will be divided over the 5 year period based on a series of equal periodic payments based on a 0% interest rate. If you choose to elect this option all beneficiaries must agree to and elect this option in order to receive this Benefit Base.

Since this product offers the Death Benefit Rider that will pay the benefit base if elected, we must receive all requirements from all beneficiaries prior to proceeding with payment.

As soon as we receive all documents, we will give your claim our prompt attention. Please be advised that elections made on the Claimant Statement are a full and final settlement once proceeds have been processed.

Please allow 10 calendar days for the review of any documents submitted for processing. If you have submitted the final requirement for a Claim, the Claim will be processed in 10 calendar days. Processing time may be extended if additional review or documentation is required.

We invite you to visit our website at https://www.northamericancompany.com/annuity-claim-forms for helpful brochures that provide additional information on settlement options that may be available to you, frequently asked questions about the claim process and electronic versions of the Claims forms. Copies of the documents found on our website can be obtained by calling our Claims Department at the number listed below.

If you have questions, please call us toll-free at 877-880-6367. We are available Monday through Thursday from 7:30 am to 5:00 pm (CT) and Friday from 7:30 am to 12:30 pm (CT). A service professional within the Claims Department will be happy to take your important call.

Sincerely,

Claims Department



NORTH AMERICAN®
A Sammons Financial Company

EXHIBIT
M

July 13, 2023

***Sent via secure email: marella.quintana@osi.nm.gov***

Marella Quintana
New Mexico Office of Superintendent of Insurance
1120 Paseo de Peralta, Room 428
Albuquerque, NM 87501

Re: Your File Number: 179561
Contract Number: 8000299481 (the "Contract")
Contract Owner: Catherine Zyburo; Charles Zyburo (the "Owner(s)")
North American Company for Life & Health Insurance ("North American" or "the Company")
NAIC Number: 66974

Dear Ms. Quintana,

North American has received the New Mexico Office of Superintendent of Insurance (the "Office")'s recent correspondence dated June 29, 2023 regarding the above referenced Contract. We appreciate the opportunity to respond to Ms. Zyburo's concerns.

The Company understands Ms. Zyburo's submission to allege delays in the claims process and state the Company will not issue the death benefit associated with the Contract's Benefits Rider. After a thorough review, we would like to provide the following discussion of the Company's position on this matter.

***Contract Background***

Contract 8000299481 is a Fixed Index Annuity issued effective October 18, 2016 to joint owners Catherine Zyburo and Charles Zyburo. At the time of issue, Ms. Zyburo and Mr. Zyburo were married. The Contract was issued with a Benefits Riders which has its own death benefit amount subject to the Contract's terms and conditions.

On August 14, 2018, the writing agent informed us the Owners were going through a divorce. In order to determine how the annuity was to be handled, we required a completed form signed and notarized by both parties. Per our normal process, we restricted the account to prevent the movement of any funds until we received the appropriate documentation. Notification dated August 16, 2023 was sent to both respective Owners.

North American did not receive the proper documentation to proceed with any distribution or ownership and beneficiary changes.

Mr. Zyburo submitted a beneficiary change form on February 3, 2020 to change the sole primary beneficiary to the Contract to Candice Zyburo and the sole contingent beneficiary to Rosemarie Zyburo. However, due to the pending divorce, this request was not processed. The last valid beneficiary designation (submitted and signed by both Owners) was 100% to the surviving spouse as the primary beneficiary and as contingent, 25% each to Gregory Zyburo, Rosemarie Zyburo, Renee Zyburo, and Candice Zyburo.

NORTH AMERICAN®
A Sammons Financial Company

***Determining the Proper Beneficiaries***

According to our records, Mr. Zyburo passed away February 18, 2021. The Company was notified March 23, 2021 and sent a claimant statement to Ms. Zyburo to process the claim. During the claim process, Ms. Zyburo submitted the official Decree of Dissolution of Marriage for review on May 28, 2021. This document indicated:

1. *[Ms. Zyburo] shall receive as her sole and separate property:*

   *…*

   *E. One half of the North American Company annuity, valued as of the date of divorce, with an approximate value of $658,155.67…*

However, the decree did not specify in what way the Contract should have been divided. Additionally, because the divorce ended the marriage, the beneficiary designation of surviving spouse may have been revoked. The Company could not interpret the court's order and did not want to be placed in a position of double liability concerning the death benefit proceeds. Therefore, the Company was not able to proceed without additional direction.

In an attempt to resolve this issue, the Company asked all relevant parties—Catherine Zyburo, Candice Zyburo, Gregory Zyburo, Rosemarie Zyburo, and Renee Zyburo—whether they could reach an agreement as to how the death benefit proceeds should be distributed. As a result, we began working with the parties to determine if an amicable agreement could be reached.

The Company was later notified the parties had come to an agreement of their own accord and was asked to proceed accordingly. The arrangement was that the death benefit proceeds were to be split evenly between Catherine Zyburo and Candice Zyburo. To confirm the parties' understanding and acceptance of this arrangement, the Company sent Letters of Instruction and Indemnity to that effect and requested signed and notarized copies back from each party.

On March 9, 2023, the Company had received all the agreements and proceeded with the claim with Catherine Zyburo and Candice Zyburo as equal beneficiaries.

***Death Claim Amount***

As stated previously, the Contract was issued with a Benefits Rider. Per the Contract, this Rider may provide a higher death benefit amount called the Benefit Base. The Benefit Base, if chosen by all beneficiaries, will be paid out in a series of equal periodic payments over 5 years at an interest rate of 0%. The specification page of the Rider notes:

> *We will interpret the provisions of this Benefits Rider so that Your Contract, as endorsed by this Rider, is intended to comply with Section 72(s) of the Internal Revenue Code, or as later amended, as applicable.*

When the beneficiaries had returned the claimant statement, they selected the Benefit Base option. However, we could not proceed with the selected option. Please note the Company must comply with all applicable Internal Revenue Service ("IRS") rules and regulations when servicing the Contract. Internal Revenue Code Section 72(s) provides:

> *(s) Required distributions where holder dies before entire interest is distributed*
>
> *(1) In general*

NORTH AMERICAN®
A Sammons Financial Company

> *A contract shall not be treated as an annuity contact for purposes of this title unless it provides that----*
> *(A) if any holder of such contract dies on or after the annuity starting date and before the entire interest in such contract has been distributed, the remaining portion of such interest will be distributed at least as rapidly as under the method of distributions being used as of the date of his death, and*
> *(B) if any holder of such contract dies before the annuity starting date, the entire interest in such contract will be distributed within 5 years after the death of such holder*

This is also codified in the Contract's terms. Section 8.1 of the Contract regarding the death benefit reads:

> *If the Owner dies and the surviving spouse is not the Owner's sole beneficiary, any death benefit will:*
> 1) *Be distributed to the applicable Owner's Beneficiary within 5 years from the death of the Owner, or*
> 2) *If requested by the Owner's Beneficiary, be distributed over a period not extending beyond the life expectancy of the Owner's Beneficiary, provided such distributions begin no later than one year after the date of death or a later date as prescribed by Internal Revenue Service regulations.*

Approximately two and a half years have passed since the death claim was opened. The Company cannot, per IRS code, offer the benefit base as the five annual payments would extend past the IRS-imposed deadline of five years past the date of death. Additionally, the Company cannot allow the beneficiaries to select a fixed period payment option as more than one year has passed since the date of death. In order to comply with federal regulations, the Company can only offer a lump sum payment. The Benefit Base amount is not available as a lump sum payment, so the complainant cannot select it as her settlement option.

***************************

North American regrets Ms. Zyburo's dissatisfaction. However, we are not in a position to grant her request for relief. We cannot pay out the Benefit Base in the contractual five year period and remain in compliance with the Internal Revenue Code; consequently, we cannot allow the beneficiaries to select it as their distribution option. At this time, the beneficiaries can only select the lump sum payment option.

We trust the above information is helpful to the Office's review of this matter. However, should you have questions or require any additional documentation, please feel free to contact me.

Sincerely,

Catrina J. Waite, Compliance Investigations
Senior Compliance Consultant
cwaite@sfgmembers.com
515-440-5564 ext. 35564

EXHIBIT

N

**August 9, 2023**

**Reply to North American's Response to the OSI Complaint**

Dear Ms. Quintana,

The following is my reply to North American's response to my Complaint with OSI. I've been frustrated by North American since the claim process started, but I just figured it was bureaucratic disorganization. **Now I realize they were intentionally delaying, causing confusion, giving vague or incomplete information in order to take advantage of me.** North American clearly did this so they wouldn't have to pay out the Death Benefit Rider/Benefit Base, which is 140% of the initial premium or around $230,000 of additional funds. If they pay only the Death Benefit of $654,921.21, they pay just the initial premium plus interest accrued; nothing out of North American's pocket.

Charles and I paid annual fees to have the Rider, so it isn't fair that North American received profit from us over the years and now refuse to uphold their end of the bargain. We paid about $40,000 for a feature/service that supposedly cannot be used. In addition, North American sprung this alleged IRS requirement on us only AFTER the period in which we could make our desired election supposedly had elapsed. Up until then, they repeatedly represented that the 5-year election was available.

I've done my research and know that North American has fiduciary duties towards me that have been violated. When I notified North American of Charles' death, they knew we were divorced and received a copy of the divorce agreement, which says I get half of the annuity. Charles tried listing Candice Zyburo as beneficiary for his half of the annuity and North American made us all sign an agreement saying 50% to Candice and 50% to me. During the claim process, North American unilaterally imposed confusing and onerous requirements causing further delay, even though the distribution was crystal clear according to the divorce agreement that I provided to them. What's more, this "5-year rule" was never mentioned until *after* everyone signed the document giving North American "Indemnity." North American's sudden citation to this never-before-mentioned "5-year rule" makes the real purpose of their burdensome indemnification

requirements obvious.

North American makes it sound like the IRS won't let them pay the rider benefit base but the rule quoted in North American's response letter doesn't say anything about equal payments. The portion of the contract quoted also says nothing about equal payments. Both only say the money has to be fully distributed within 5 years after death. Charles passed away on February 18, 2021, so it has not been 5 years. **North American can pay out the benefit base and still be in compliance with IRS code.**

I believe that North American purposely kept me confused (even though all the paperwork provided clearly showed 50% to Candice and 50% to me) and made me jump through all kinds of hoops just to cause enough delay so they could avoid paying the rider/benefit base. How can they get paid (~$40k) for the cost of the rider and then not follow through on their obligation? They have sent me several letters recently saying I can still pick the death benefit rider, why would they do that if it isn't an option anymore?

I am nearly 75 years old and feel completely taken advantage of by North American because they purposely caused delay and withheld information about the "5-year rule" to me until it was too late for me to make my desired election. In fact, I didn't ever get a thorough explanation from North American until I did the OSI complaint.

Please help me figure this out because they've never given me a straight answer until your office got involved. I'm losing a lot of money that I am entitled to and I need your help dealing with them or recommendation on what to do next because they are taking zero responsibility and not doing their fiduciary duty.

Sincerely,

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
11/6/2023 4:06 PM
KATINA WATSON
CLERK OF THE COURT
Roah K Khweis

# SUMMONS

| District Court: Second Judicial District Court<br>Address:<br>400 Lomas Blvd NW<br>Albuquerque, NM 87102<br>Court Telephone Number: 505-841-8400 | Case No.: D-202-CV-2023-08368<br><br>Assigned Judge: Lisa Chavez Ortega |
|---|---|
| Plaintiffs: Candice Zyburo and Catherine Zyburo<br>v.<br>Defendants: North American Company for Life and Health Insurance | To: North American Company for Life and Health Insurance<br>℅ Brian D. Hansen as Registered Agent<br>8300 Mills Civic Parkway<br>West Des Moines, IA 50266 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1. A Complaint has been filed against you. A copy of the Complaint is attached. The Court issued this Summons.
2. You must respond to this Complaint in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.
3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the Complaint.
4. If you do not respond in writing, the Court may enter judgment against you as requested in the Complaint.
5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6. If you need an interpreter, you must ask for one in writing.
7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Issued at Albuquerque, New Mexico, this ____ day of 10/30/2023, ______.

CLERK OF DISTRICT COURT
Katina Watson
By:
SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT
By: [signature] Deputy Clerk
Jennie Sotelo

/s/ Kate P. Jones
*Signature of Attorney for Plaintiffs*
Name: Kate P. Jones, Esq.
Address: DeNiro Law, LLC
PO Box 45104 , Rio Rancho, NM 87174
Tele No.: (505) 977-8975
Email: kate@denirolaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**

STATE OF IOWA )
)ss
COUNTY OF Polk )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in Polk County on the 6 day of November, 2023 by delivering a copy of this summons, with a copy of the Complaint.

**(check one box and fill in appropriate blanks)**

[ ] to the Defendant ____________ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ] to the Defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of the complaint attached, in the following manner:

[ ] to ____________, a person over fifteen (15) years of age and residing at the usual place of abode of defendant ____________, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at ____________ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to ____________, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at ____________ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at ____________ (*insert defendant's last known mailing address*).

[✓] to Amy Feas, an agent authorized to receive service of process for defendant North American Company for Life + Health

[ ] to ____________, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant ____________ (*used when defendant is a minor or an incompetent person*).

[ ] to ____________ (*name of person*), ____________, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: ____________

Alise Burris
Signature of person making service

Process Server
Title (*if any*)

Subscribed and sworn to before me this 6 day of November, 2023

Leah Burris
Judge, notary or other officer authorized to administer oaths

notary
Official title

LEAH BURRIS
Commission Number 824421
My Commission Expires
March 23, 2026

# AFFIDAVIT OF SERVICE

**State of New Mexico** **County of Bernalillo** **District Court**

Case Number: D-202-CV-2023-08368

Plaintiff:
**CANDICE ZYBURO AND CATHERINE ZYBURO**

vs.

Defendant:
**NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE**

For:
DeNiro Law, LLC
PO Box 45104
Rio Rancho, NM 87174

Received by Burris Process Serving, LLC on the 2nd day of November, 2023 at 12:18 pm to be served on **NORTH AMERICAN COMPANY FOR LIFE AND HEALTH C/O BRIAN D. HANSEN, REGISTERED AGENT, 8300 MILLS CIVIC PARKWAY, WEST DES MOINES, IA 50266**.

I, Alese Burris, being duly sworn, depose and say that on the **6th day of November, 2023** at **11:34 am, I:**

served a **CORPORATION** by delivering a true copy of the **SUMMONS, VERIFIED COMPLAINT, CERTIFICATION REGARDING ARBITRATION UNDER LOCAL RULE LR2-603, EXHIBITS** with the date and hour of service endorsed thereon by me, to: **AMY TEAS** as **SENIOR VP & GENERAL COUNSEL** for **NORTH AMERICAN COMPANY FOR LIFE AND HEALTH**, at the address of: **8300 MILLS CIVIC PARKWAY, WEST DES MOINES, IA 50266**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 6th day of November, 2023

[signature]
NOTARY PUBLIC

LEAH BURRIS
Commission Number 824421
My Commission Expires
March 23, 2026

[signature]
**Alese Burris**
Process Server

**Burris Process Serving, LLC**
**699 Walnut Street**
**Suite 400**
**Des Moines, IA 50309**
**(515) 978-8558**

Our Job Serial Number: BPL-2023001009

Copyright © 1992-2023 Database Services, Inc. - Process Server's Toolbox V8.1t

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
12/6/2023 2:58 PM
KATINA WATSON
CLERK OF THE COURT
Marilyn D Crane

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**CANDICE ZYBURO and**
**CATHERINE ZYBURO,**

**Plaintiffs,** **CASE NO.: D-202-CV-2023-08368**

**v.**

**NORTH AMERICAN COMPANY FOR**
**LIFE AND HEALTH INSURANCE,**

**Defendant.**

**NOTICE OF APPEARANCE**

PLEASE TAKE NOTICE THAT Nury H. Yoo will appear as counsel for Defendant, North American Company for Life and Health Insurance in the above-captioned case.

Dated: December 6, 2023

Respectfully submitted,

*/s/ Nury H. Yoo*

Nury H. Yoo (142457)
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: +1 415 591 7550
Facsimile: +1 415 591 7510
*nury.yoo@faegredrinker.com*

*Attorney for Defendant North American Company for Life and Health Insurance*

**CERTIFICATE OF SERVICE**

I certify that on December 6, 2023, I filed the foregoing Notice of appearance via the Court's electronic filing system, which will give notice to all parties and their counsel of record. I also sent a copy of the foregoing U.S. mail and electronic mail to:

Kate P. Jones
DeNiro Law, LLC
PO Box 45104
Rio Rancho, New Mexico 87174
Tel: (505) 977-8975
*kate@denirolaw.com*

*Attorney for Plaintiffs*

*/s/ Nury H. Yoo*

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
12/6/2023 2:58 PM
KATINA WATSON
CLERK OF THE COURT
Marilyn D Crane

# EXHIBIT A

D-202-CV-2023-08368

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

CANDICE ZYBURO AND CATHERINE ZYBURO

Plaintiffs,

v.

NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE

Defendant.

CASE NO. 23-1083

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendant North American Company for Life and Health Insurance ("North American") hereby removes the state court action captioned *Zyburo et al. v. North American Company for Life and Health Insurance*, Case No.: D-202-CV-2023-08368, from the State of New Mexico, County of Bernalillo, Second Judicial District Court, (the "Action") to this Court based upon diversity of citizenship and an amount in controversy exceeding $75,000. In support of this Notice Of Removal, North American states:

## I. BACKGROUND

### A. Nature Of The Case

1. Plaintiffs filed this Action in the Second Judicial District Court, Bernalillo County, New Mexico, on October 26, 2023. A true and correct copy of Plaintiffs' Complaint ("Complaint") is attached hereto as "Exhibit A."

2. The Complaint alleges breach of loyalty, breach of duty of disclosure, breach of implied covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation,

fraudulent misrepresentation, violation of the New Mexico Insurance Code, breach of contract, request for constructive trust, and violation of the Unfair Trade Practices Act. *See* Ex. A.

3.     Plaintiffs served North American with the Summons and Complaint on November 6, 2023.

**B.     Removal**

4.     As set forth in more detail below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 as an action between citizens of different states in which the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332(a), and North American has satisfied the procedural requirements for removal set forth in 28 U.S.C. § 1446.

## II.     REMOVAL IS PROPER UNDER DIVERSITY JURISDICTION

**A.     Complete Diversity Of Citizenship Exists Between All Properly Joined Parties**

5.     This is an action that may be removed to this Court under 28 U.S.C. § 1441, in that there exists complete diversity of citizenship between the properly joined parties—Plaintiffs and North American—in the underlying cause of action. Further, the amount in controversy as between Plaintiffs and North American exceeds the sum or value of $75,000, exclusive of interests and costs.

6.     As explained below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 as an action between citizens of different states. Section 1441 provides that removal based on diversity jurisdiction is proper "if [none] of the parties in interest *properly joined and*

*served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added).

7. North American Company for Life and Health Insurance is an Iowa company with its principal place of business in West Des Moines, Iowa.

8. Plaintiff Candice Zyburo is a resident and domiciliary of New York. Ex. A ¶ 1.

9. Plaintiff Catherine Zyburo is a resident and domiciliary of New Mexico. Ex. A ¶ 2.

10. Thus, complete diversity of citizenship exists between Plaintiffs and North American.

**B. <u>The Amount In Controversy Exceeds $75,000</u>**

11. Based on the allegations in the Complaint, the amount in controversy, exclusive of interests and costs, exceeds $75,000, as required by 28 U.S.C. § 1332(a).

12. A defendant can establish the amount in controversy by setting forth facts in the notice of removal that demonstrate the amount in controversy exceeds $75,000. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").

13. Plaintiffs' allegations in the Complaint demonstrate that they seek damages in excess of $75,000. *See* Ex. A ¶¶ 38, 104, Prayer.

14. Plaintiffs alleged damages demonstrate that Plaintiffs' claims exceed the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

**C. Removal Is Timely**

15. Removal is timely because North American was served with a Summons and Complaint on November 6, 2023.

16. No previous request has been made for the relief requested herein.

**D. Venue And Other Requirements Are Satisfied**

17. The United States District Court for the District of New Mexico includes Bernalillo County, the County in which the Action is now pending. Therefore, venue is proper because the District of New Mexico is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

18. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon North American in the Action are attached hereto as "Exhibit B."

19. Pursuant to District of New Mexico Local Rule 3.4(B), a true and correct copy of the docket sheet in the Action is attached hereto as "Exhibit C." A true and correct copy of the entire Circuit Court file has been requested from the Clerk of Bernalillo County, New Mexico, and will be filed with this Court upon receipt.

20. A true and correct copy of the Notice of Filing of Notice of Removal to be filed in the state court action is attached hereto as "Exhibit D".

WHEREFORE, Defendant North American Company for Life and Health Insurance gives notice that the matter styled as *Zyburo et al. v. North American Company for Life and Health Insurance*, Case No.: D-202-CV-2023-08368, is removed to the United States District Court for the District of New Mexico.

Dated: December 6, 2023

Respectfully submitted,

*/s/ Jesse Linebaugh*
Jesse Linebaugh
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Tel: (515) 248-9000
Fax: (515) 248-9010
*jesse.linebaugh@faegredrinker.com*

*Attorney for Defendant North American Company for Life and Health Insurance*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and served a copy of the foregoing via regular U.S. Mail and electronic mail upon:

Kate P. Jones
DeNiro Law, LLC
PO Box 45104
Rio Rancho, New Mexico 87174
Tel: (505) 977-8975
*kate@denirolaw.com*

*Attorney for Plaintiffs*

*/s/ Jesse Linebaugh*

# EXHIBIT A

2ND JUDICIAL DISTRICT COURT
Bernalillo County
10/26/2023 3:37 PM
KATINA WATSON
CLERK OF THE COURT
Andrea I Gutierrez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**CASE NO:** D-202-CV-2023-08368

**CANDICE ZYBURO and**
**CATHERINE ZYBURO,**

**Plaintiffs,**

**v.**

**NORTH AMERICAN COMPANY FOR**
**LIFE AND HEALTH INSURANCE,**

**Defendant.**

**VERIFIED COMPLAINT FOR BREACH OF LOYALTY, BREACH OF DUTY OF DISCLOSURE, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, UNJUST ENRICHMENT, NEGLIGENT MISREPRESENTATION, FRAUDULENT MISREPRESENTATION, VIOLATION OF THE NEW MEXICO INSURANCE CODE, BREACH OF CONTRACT, REQUEST FOR CONSTRUCTIVE TRUST, AND VIOLATION OF THE UNFAIR TRADE PRACTICES ACT**

**COME NOW** Plaintiffs, Candice Zyburo and Catherine Zyburo, by and through their attorney of record, DeNiro Law, LLC (Vanessa L. DeNiro, Esq. and Kate Jones, Esq.), and hereby file this Complaint for Breach of Loyalty, Breach of Duty of Disclosure, Breach of Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Negligent Misrepresentation, Fraudulent Misrepresentation, Violation of the New Mexico Insurance Code, Breach of Contract, Request For Constructive Trust, and Violation of the Unfair Trade Practices Act, and as grounds therefore state:

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Candice Zyburo, is an individual residing in Nassau County in the State of New York. Candice Zyburo is also the Personal Representative of the Estate of Charles Dennis Zyburo and a survivor beneficiary of the Fixed Index Annuity.

2. Plaintiff, Catherine Zyburo, is an individual residing in Bernalillo County, New Mexico. Catherine Zyburo is also a beneficiary and owner of the Fixed Index Annuity issued effective October 18, 2016.

3. Defendant, North American Company for Life and Health Insurance, is a corporation existing under the laws of the state of Iowa with its principal place of business in West Des Moines, Iowa.

4. The insured party who passed away, Charles Dennis Zyburo (hereafter "Decedent") died on February 18, 2021. At the time of death, Decedent was domiciled in Bernalillo County, New Mexico.

## III. FACTUAL BACKGROUND

5. On or about October 18, 2016, Defendant issued a Fixed Index Annuity (hereafter "Annuity") to Catherine Zyburo and the Decedent, as joint owners. The Annuity issued is governed by an Individual Single Premium Deferred Annuity Contract (hereafter "Annuity Contract").

6. At the time of issuance, Catherine Zyburo (hereafter "Catherine") and the Decedent were married.

7. After issuance of the Annuity, the survivor beneficiary designations were as follows: 100% to the surviving spouse as the primary beneficiary and as contingent, 25% each to Gregory Zyburo, Rosemarie Zyburo, Renee Zyburo, and Candice Zyburo.

8. The Premium deposited at the time of purchase was $600,742.06.

9. Catherine and Decedent also purchased a Death Benefit Rider.

10. The cost of the Rider was 1.2% of the Accumulated Value per year.

11. Upon the 5th Contract Anniversary, the Death Benefit Rider entitled Catherine Zyburo and Decedent to 140% of the Premium.

12. Since issuance, Defendant received approximately $40,000.00 as payment for the cost of the Death Benefit Rider.

13. On or about August 14, 2018, Defendant was notified of Decedent and Plaintiff Catherine Zyburo's impending divorce.

14. On or about August 16, 2018, nearly a year **before** the divorce was finalized, Defendant purportedly sent a Divorce Settlement Form on a single occasion, requiring it be completed by both Catherine and Decedent.

15. Upon information and belief, this Divorce Settlement Form was sent to an incorrect address and was not received by either Catherine or Decedent. See **Exhibit A:** *Returned Mail from NAC.*

16. On August 27, 2018, Catherine Zyburo filed a Verified Petition for Dissolution of Marriage in the Second Judicial District Court, under Case Number D-202-DM-2018-02685.

17. On July 19, 2019, Catherine and the Decedent were officially divorced.

18. Pursuant to Article III(1)(E) and (2)(E) of the Marital Settlement Agreement (hereafter "MSA"), the Annuity was to be divided equally. See **Exhibit B:** *Marital Settlement Agreement in Pertinent Part.*

19. The Decedent's Last Will and Testament was executed on January 27, 2020.

20. The Decedent's Will provided for a specific gift, stating, "An annuity from North American Company policy number 8000299481 **my portion all goes to Candice Melanie Zyburo**." (emphasis added). See **Exhibit C:** *Decedent's Last Will and Testament in Pertinent Part.*

21. On or about January 29, 2020, Decedent submitted an Annuity Beneficiary Change Request to Defendant, seeking to designate Candice Zyburo as sole primary beneficiary. See **Exhibit D:** *Annuity Beneficiary Change Request in Pertinent Part.*

22. This attempted beneficiary change was not accepted by Defendant, but upon information and belief, Defendant never notified Decedent of this decision.

23. Given the totality of circumstances, between the MSA, the Decedent's Will, and the attempted beneficiary change, the intentions for the account were unambiguous: 50% to Catherine and 50% to Candice.

24. The Decedent passed away on February 18, 2021.

25. Candice Zyburo filed an Application for Informal Probate of Will and Appointment of Personal Representative on May 27, 2021 in the Second Judicial District Court under case number D-202-PB-2021-00411. The Court then appointed Candice as Personal Representative of the Estate in an Order of Informal Probate of Will and Appointment of Personal Representative, entered on June 24, 2021.

26. On or about October 5, 2021, counsel for the Personal Representative sent a Demand Letter to Defendant, requesting information and documentation related to the Annuity. See **Exhibit E:** *October 5, 2021 Demand Letter in Pertinent Part.*

27. After multiple inquiries went completely ignored or only partially answered, a Subpoena Duces Tecum, was served upon Defendant on June 23, 2022 in probate case number D-202-PB-2021-00411 for all documentation related to the Annuity.

28. Defendant did not respond to the subpoena until two months later on August 23, 2022.

29. Upon finally receiving documentation in response to the subpoena and after further communication with Defendant, it was discovered that the Defendant never divided the Annuity after the divorce and Defendant expressed uncertainty as to the proper survivor beneficiaries.

30. The Personal Representative, through counsel, continued to diligently and regularly communicate with Defendant to ascertain the Defendant's exact reason for withholding distribution of proceeds and to determine a solution for distribution to occur. This correspondence was primarily with a Claims Specialist named Joseph Crawford, who was assigned to the matter.

31. Counsel for the Personal Representative made multiple requests of Defendant to provide a formal, written position statement to identify with specificity the precise root cause that led Defendant to place a hold on distribution. See **Exhibit F:** *September 7, 2022 Email to Claims Specialist.* On the rare occasions that Defendant chose to respond, it failed to provide any coherent explanation for the hold.

32. On September 13, 2022, approximately a year and a half after Decedent passed away, Defendant belatedly provided the Personal Representative with Indemnification

Agreements for all conceivable beneficiaries to execute. Defendant still neglected to provide an explanation as to why the Indemnification Agreements were even necessary.

33. While coordinating signatures for the Indemnification Agreements, counsel for the Personal Representative contacted Claims Specialist Crawford to confirm several aspects of the Annuity.

34. Specifically, the Personal Representative's counsel requested information regarding the base value of the Annuity, as well as the existence and value of any applicable Riders. See **Exhibit G:** *September 19, 2022 email to NAC.*

35. Defendant's Claims Specialist responded, stating that, "The death benefit value is $654,921.21. There is no death benefit rider on the contract." See **Exhibit H:** *September 20, 2022 email from NAC.*

36. Counsel for the Personal Representative replied, requesting the Claims Specialist check again and provided documentation sent by Defendant in response to the subpoena that corroborated the existence of a Death Benefit Rider. See **Exhibit I:** *September 29, 2022 email to NAC.*

37. On September 30, 2022, the Defendant's Claims Specialist emailed admitting to providing materially inaccurate information and advised that, "[T]his contract does have a GMDB rider. This rider has a benefit base value of $833,940.79. If the listed beneficiary(ies) decide to elect the rider payout, they must all agree to choose the rider payout which must be divided over 5 years." See **Exhibit J:** *September 30, 2022 Email from NAC Claims Specialist.*

38. It is important to note that i) the difference between the benefit base amount and the rider payout is very substantial, a discrepancy of approximately $179,000.00; ii) the Claims

Specialist's instructions for electing the rider payout were sent over a year and a half after the Decedent's death; and iii) there was no mention of or reference to IRC 72(s).

39. In a separate email exchange, clarification and confirmation was sought as to how the rider payout would operate. The Claims Specialist reaffirmed that if the Plaintiffs "... choose the 5 year payout then the value would be based on the rider value of $833,940.79. If they choose another settlement option then the value would be based on the base benefit value of $654,921.21." See **Exhibit K:** *Additional Email Correspondence on September 30, 2022.*

40. Despite being advised that 4 of the 5 Indemnification Agreements required by Defendant had been signed and ongoing efforts were being made to obtain the fifth signature, Defendant filed an Interpleader Action in the US District Court for the Eastern District of New York (Case No. 1:23-cv-1140) on February 10, 2023. No notice of commencement of the interpleader, nor copies of the filings were provided to counsel for the Personal Representative.

41. On February 22, 2023, the fifth and final Indemnification Agreement had been signed and all executed agreements were promptly submitted to Defendant. The Interpleader was voluntarily dismissed shortly thereafter.

42. With the understanding that issues preventing distribution had been resolved and relying on Defendant's previously stated instructions, Plaintiffs filled out a Claimant's Statement form on or about March 29, 2023, each electing the Rider payout option over a period of 5 years.

43. Plaintiffs received a letter dated April 12, 2023, stating for the very first time that the Death Benefit Rider could not be elected purportedly because that settlement option was, "... only available for one year from date of death" and went on further to advise that, "Lump sum is

the only settlement option available at this time." See **Exhibit L:** *April 12, 2023 Correspondence from NAC.*

44. Curiously, the very same April 12, 2023 Letter goes on to state that,

> "This contract has a Death Benefit Rider that will pay the Benefit Base as of the date of death though [sic] a series of equal periodic payments over 5 years at an interest rate of 0%. Your portion of this Benefit Base is $416,970.40. This Benefit Base Amount will be divided over the 5 year period based on a series of equal periodic payments based on a 0% interest rate. If you choose to elect this option all beneficiaries must agree to and elect this option in order to receive this Benefit Base. Since this product offers the Death Benefit Rider that will pay the benefit base if elected, we must receive all requirements from all beneficiaries prior to proceeding with payment."

45. The contradictions in this letter cannot be overstated; on one hand advising the Benefit Base cannot be elected, while simultaneously providing detailed instructions for making that exact election.

46. The April 12, 2023 Letter provided no further information or explanation as to why the Death Benefit Rider payout option could not be elected beyond 1 year from date of death.

47. Counsel for the Plaintiffs contacted Defendant multiple times for a formal explanation, only to be given vague references to an undisclosed section of the Internal Revenue Code ("IRC") and that the IRS would not allow for the 5 year payout option.

48. On or about June 1, 2023, Catherine Zyburo submitted a complaint to the New Mexico Office of Superintendent of Insurance ("OSI").

49. In its Response dated July 13, 2023, Defendant finally provided (despite numerous requests) a detailed explanation of its position and identified the IRC 72(s) as the

reason for the 5 year payout no longer being an available option. See **Exhibit M:** *NAC Response to OSI Complaint.*

50. Catherine Zyburo submitted a Reply on or about August 8, 2023, disputing the Defendant's interpretation of and reliance upon IRC 72(s). The Reply expressed a litany of frustrations and the efforts made to overcome the absurd hurdles imposed by Defendant. See **Exhibit N:** *OSI Reply.*

51. OSI's purview was limited to document review and facilitating dialogue, and therefore closed the file on August 8, 2023, stating that no further action would be taken by their office.

52. Counsel for Plaintiffs sent Defendant a Final Demand Letter on September 5, 2023. This was done as a final, good faith attempt to resolve matters prior to commencing litigation.

53. Defendant responded to the Final Demand Letter on September 29, 2023, which simply restated the contents of its OSI Response.

54. IRC Section 72(s) states,

> "Required distributions where holder dies before entire interest is distributed (1) In general A contract shall not be treated as an annuity contact for purposes of this title unless it provides that— (A) if any holder of such contract dies on or after the annuity starting date and before the entire interest in such contract has been distributed, the remaining portion of such interest will be distributed at least as rapidly as under the method of distributions being used as of the date of his death, and (B) if any holder of such contract dies before the annuity starting date, the entire interest in such contract will be distributed within 5 years after the death of such holder."

55. Despite Defendant's representations, IRC Section 72(s) does not contain any language related to equal payments or a specific number of payments; only that full distribution will occur within 5 years after the date of death.

**III. ARGUMENT**

**COUNT I: BREACH OF DUTY OF LOYALTY**

56. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

56. An insurer assumes a fiduciary obligation toward an insured in matters pertaining to the performance of obligations in the insurance contract. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, *Sanchez v. Allstate Ins. Co.*, 2010 N.M. App. Unpub. LEXIS 79, 15 (Ct. App. Feb. 3, 2010) (internal citations omitted).

57. As a general matter, a fiduciary duty is a duty of loyalty. *McWilliams v. Jensen*, 2015 N.M. App. Unpub. LEXIS 173 (Ct. App. Apr. 6, 2015) (internal citations omitted). Since a fiduciary is obliged to act primarily for another's benefit in matters connected with such undertaking, a fiduciary breaches this duty by placing his interests above those of the beneficiary. *Id.*

58. Defendant's breaches of its fiduciary duty of loyalty include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

b. Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration; and

c. Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout.

59. Each and all of the above stated acts and omissions constitute breach of Defendant's fiduciary duty to loyalty to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

60. Defendant's breach of its fiduciary duty of loyalty with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT II: BREACH OF DUTY OF DISCLOSURE**

61. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

62. An insurer assumes a fiduciary obligation toward an insured in matters pertaining to the performance of obligations in the insurance contract. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, *Sanchez v. Allstate Ins. Co.*, 2010 N.M. App. Unpub. LEXIS 79, 15 (Ct. App. Feb. 3, 2010) (internal citations omitted).

63. A fiduciary is required to fully disclose material facts and information relating to the fiduciary relationship even if the one to whom the duty is owed has not asked for the information. *Valerio v. San Mateo Enters.*, 2017-NMCA-059, 400 P.3d 275. The duty of disclosure is a hallmark of a fiduciary relationship. *Id.*

64. Defendant's breaches of its fiduciary duty of disclosure include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Failing to disclose to original owners of the Annuity, including Catherine Zyburo, that Defendant required the Divorce Settlement Form to be executed in order to divide the Annuity;

b. Failing to disclose to the original owners of the Annuity, including Catherine Zyburo, that Defendant had not divided the Annuity, despite Defendant having actual knowledge that the owners were divorced and the Annuity was divided pursuant to the Marital Settlement Agreement;

c. Failing to disclose to the original owners of the Annuity, including Catherine Zyburo, that Defendant rejected Decedent's Annuity Beneficiary Change Request, in which Decedent sought to designate Candice Zyburo as sole primary beneficiary of his portion of the Annuity;

d. Failing to timely disclose basic information and documentation related to the Annuity, despite repeated, unequivocal requests for disclosure from Catherine Zyburo, Candice Zyburo and the Undersigned;

e. Failing to timely disclose Defendant's reason for withholding distribution of proceeds, despite repeated and unequivocal requests for disclosure from Catherine Zyburo, Candice Zyburo and the Undersigned; and

     f. Failing to timely disclose that IRC 72(s) allegedly renders Plaintiff's election of the Death Benefit Rider only available to Plaintiffs for one year from Decedent's death.

65. Each and all of the above stated acts and omissions constitute breach of Defendant's fiduciary duty to disclose to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

66. Defendant's breach of its fiduciary duty to disclose with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT III: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

67. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

68. Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement. *Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, 111 N.M. 57, 801 P.2d 639. Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. *Id.*

69. Defendant's breaches of the covenant of good faith and fair dealing include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

     b. Failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration; and

c. Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout and deprive Plaintiffs of the same.

70. Each and all of the above stated acts and omissions by Defendant have deprived Plaintiffs of the benefit of the Annuity Contract. Therefore, each and all constitute breaches of the implied covenant of good faith and fair dealing as to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

71. Defendant's breach of the implied covenant of good faith and fair dealing with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT IV: UNJUST ENRICHMENT**

72. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

73. The elements of unjust enrichment are: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Sloane v. Rehoboth McKinley Christian Health Care Servs.*, 2018-NMCA-048, 423 P.3d 18.

74. As a result of Defendant's bad-faith refusal to timely disclose matters materially affecting the Annuity to Catherine Zyburo, Candice Zyburo, and the Undersigned, Defendant has

intentionally prolonged the amount of time in which the Annuity generates revenue. Defendant has been unjustly enriched as a result of the aforementioned acts and omissions and at the expense of Plaintiffs.

75. As a result of Defendant's misrepresentations and refusal to communicate in good-faith regarding Plaintiffs' ability to elect the death benefit rider, Defendant has knowingly benefitted in ways, including, but not limited, to the following:

a. Retaining the original owners', including Catherine Zyburo's, $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider with no consideration conferred on the owners or beneficiaries;

b. Retaining the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout that Plaintiffs are entitled to pursuant to the Annuity Contract; and

c. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant.

76. Each and all of the above stated acts and omissions constitute unjust enrichment of Defendant at the expense of Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

77. Defendant has been wrongfully enriched at the expense of Plaintiffs, for which they seek restitution within the jurisdictional limits of this Court.

**COUNT V: NEGLIGENT MISREPRESENTATION**

78. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

79. Negligent misrepresentation requires a failure to exercise ordinary care in obtaining or communicating a statement, or an intent that the plaintiff receives and be influenced by the statement where it is reasonably foreseeable that the plaintiff would be harmed if the information conveyed was incorrect or misleading. *Cobb v. Gammon*, 2017-NMCA-022, 389 P.3d 1058.

80. Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s) in order to induce Plaintiffs to rely on the same.

81. Each and all of the above stated acts and omissions constitute negligent misrepresentation by Defendant to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

82. As a result of Plaintiffs' reliance on Defendant's negligent misrepresentations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VI: FRAUDULENT MISREPRESENTATION**

83. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

84. A fraudulent misrepresentation claim requires that the injured party show that the other party (1) made a misrepresentation of fact; (2) with the intent to deceive and to induce the injured party to act upon it; (3) and upon which the injured party actually and detrimentally relies. *State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, 321 P.3d 128

85. Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s) in order to deceive Plaintiffs and to induce Plaintiffs to rely on the same.

86. Each and all of the above stated acts and omissions constitute fraudulent misrepresentations by Defendant on Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

87. As a result of Plaintiffs' actual and detrimental reliance on Defendant's false representations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VII: VIOLATION OF THE NEW MEXICO INSURANCE CODE: NMSA § 59A-16-6**

78. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

88. Section § 59A-16-6 of the New Mexico Insurance Code provides that no person shall make or issue, or cause to be made or issued in any manner, any written or oral statement misrepresenting the terms, conditions, benefits or advantages of any policy for the purpose of inducing or attempting or tending to induce any other person to lapse, forfeit, surrender, borrow against, retain, exchange, convert or otherwise deal with or dispose of any policy.

89. Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s), and therefore the statute's affect on the terms, conditions, benefits and/or advantages of the Annuity, in order to to induce Plaintiffs to rely on the same, causing Plaintiffs to lapse, forfeit and surrender their right to elect the Death Benefit Rider.

90. Each and all of the above stated acts and omissions constitute a violation of NMSA § 59A-16-6 by Defendant on Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

91. As a result of Plaintiffs' actual and detrimental reliance on Defendant's false representations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VIII: BREACH OF CONTRACT**

92. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

93. In order to prove breach of contract, a plaintiff will be required to prove that (1) there is a contractual obligation; (2) there was a breach of such; and (3) the breach resulted in damages. *Alderete v. City of Albuquerque*, 2015 N.M. App. Unpub. LEXIS 48 (Ct. App. Feb. 23, 2015).

94. Defendant's breach of the Annuity Contract include, but are not limited to, Defendant's refusal to allow Plaintiffs to elect the Death Benefit Rider which Plaintiffs are contractually entitled to and paid $40,000.00 in consideration to Defendant in exchange for.

95. Each and all of the above stated acts and omissions constitute breach of contract by Defendant. Plaintiffs reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

96. As a result of Defendant's breaches of contract, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT IX: REQUEST FOR CONSTRUCTIVE TRUST**

97. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98. A constructive trust is imposed to prevent the unjust enrichment that would result if the person having the property were permitted to retain it. *Tartaglia v. Hodges*, 2000-NMCA-080, 129 N.M. 497, 10 P.3d 176. The circumstances where a court might impose a constructive trust may involve actual or constructive fraud, duress, undue influence, abuse of a confidence, breach of a fiduciary duty, or similar wrongful conduct. *Id.* More generally, such a trust can be imposed based upon the breach of any legal or equitable duty, or the commission of a wrong. *Id.*

99. As alleged in the preceding sections, Defendant has intentionally prolonged the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned.

100. In order to prevent further unjust enrichment of Defendant, this Court should impose a constructive trust on the Annuity funds.

101. Plaintiffs respectfully request that the Court grant Plaintiffs' request for constructive trust and that the Court grant further relief as is warranted.

**COUNT X: VIOLATION OF THE UNFAIR TRADE PRACTICES ACT**

102. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

103. According to the Unfair Trade Practices Act, unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful. NMSA § 57-12-3.

104. Defendant's violations of the Unfair Trade Practices Act include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

b. Intentionally failing to timely disclose (i) Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and (ii) Death Benefit Rider payout and the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration, resulting in a gross disparity between the value received by Plaintiffs and the price paid.

105. Each and all of the above stated acts and omissions constitute violations of the Unfair Trade Practices Act by Defendant. Plaintiffs reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

106. As a result of Defendant's violations of the Unfair Trade Practices Act, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court as well as attorneys fees and costs.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendants and for the following:

a. Special and actual damages as alleged herein and/or proven at trial;

b. Prejudgment interest in the maximum amount allowed by law;

c. Prejudgment interest from the date of the injury through the date of judgment, at the maximum rate allowed by law;

d. Post judgment interest at the maximum rate allowed by law;

e. As a result of Defendant's malicious, willful, reckless, wanton, oppressive, and/or in bad faith actions, punitive damages in an amount to be determined by the Court at trial;

f. Attorneys fees and costs incurred in the prosecution of this action; and

g. Any and all such other and further relief, whether in law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

DENIRO LAW, LLC

By: _/s/ Kate P. Jones_
Kate P. Jones, Esq.
*Attorney for Plaintiffs*
P.O. Box 45104
Rio Rancho, NM 87174
kate@denirolaw.com
Tele: 505.977.8975

# EXHIBIT B

**SUMMONS**

| District Court: Second Judicial District Court<br>Address:<br>400 Lomas Blvd NW<br>Albuquerque, NM 87102<br>Court Telephone Number: 505-841-8400 | Case No.: D-202-CV-2023-08368<br><br>Assigned Judge: Lisa Chavez Ortega |
|---|---|
| Plaintiffs: Candice Zyburo and Catherine Zyburo<br>v.<br>Defendants: North American Company for Life and Health Insurance | To: North American Company for Life and Health Insurance<br>% Brian D. Hansen as Registered Agent<br>8300 Mills Civic Parkway<br>West Des Moines, IA 50266 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1. A Complaint has been filed against you. A copy of the Complaint is attached. The Court issued this Summons.
2. You must respond to this Complaint in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.
3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the Complaint.
4. If you do not respond in writing, the Court may enter judgment against you as requested in the Complaint.
5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6. If you need an interpreter, you must ask for one in writing.
7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Issued at Albuquerque, New Mexico, this ____ day of 10/30/2023, ______.

CLERK OF DISTRICT COURT
Katina Watson

By:
SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT
By: [signature]
Deputy Clerk
Jennie Sotelo

/s/ Kate P. Jones
*Signature of Attorney for Plaintiffs*
Name: Kate P. Jones, Esq.
Address: DeNiro Law, LLC
PO Box 45104 , Rio Rancho, NM 87174
Tele No.: (505) 977-8975
Email: kate@denirolaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**

STATE OF IOWA )
)ss
COUNTY OF ______________ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in ______________ County on the _____ day of ______________, 2023 by delivering a copy of this summons, with a copy of the Complaint.

**(check one box and fill in appropriate blanks)**

[ ] to the Defendant ____________________ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ] to the Defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of the complaint attached, in the following manner:

[ ] to ________________________, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _________________, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at __________________ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to ______________________, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____________________ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at __________________ (*insert defendant's last known mailing address*).

[ ] to _______________________, an agent authorized to receive service of process for defendant ____________________________.

[ ] to __________________, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____________________ (*used when defendant is a minor or an incompetent person*).

[ ] to __________________________ (*name of person*), ________________________, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: ___________________________

_________________________________
Signature of person making service

_________________________________
Title (*if any*)

Subscribed and sworn to before me this _____ day of ___________, _____.

_________________________________
Judge, notary or other officer authorized to administer oaths

_________________________________
Official title

FILED 2ND JUDICIAL DISTRICT COURT
Bernalillo County
10/26/2023 3:37 PM
KATINA WATSON
CLERK OF THE COURT
Andrea I Gutierrez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

CASE NO: D-202-CV-2023-08368

CANDICE ZYBURO and
CATHERINE ZYBURO,

Plaintiffs,

v.

NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE,

Defendant.

**CERTIFICATION REGARDING**
**ARBITRATION UNDER LOCAL RULE LR2-603**

**COME NOW** Plaintiffs Candice Zyburo and Catherine Zyburo, by and through their counsel of record DeNiro Law, LLC, (Kate P. Jones, Esq., and Vanessa L. DeNiro, Esq.), and hereby certify that:

____ This case is subject to referral to arbitration under Local Rule LR2-603. No party seeks relief other than a money judgment and no party seeks an award in excess of $25,000.00, exclusive of punitive damages, interest, costs, and attorney's fees.

_X_ This case is not subject to referral to arbitration under Local Rule LR2-603 because at least one party seeks relief other than a money judgment and/or at least one party seeks an award in excess of $25,000.00, exclusive of punitive damages, interest, costs, and attorney's fees.

I further certify that the pleadings in this case are not closed, pursuant to the meaning under the Guidelines of Local Rule LR2-603.

Respectfully submitted,

DENIRO LAW, LLC

By: */s/ Kate P. Jones*

Kate P. Jones, Esq.
*Attorney for Plaintiffs*
P.O. Box 45104
Rio Rancho, NM 87174
kate@denirolaw.com
Tele: 505.977.8975

2ND JUDICIAL DISTRICT COURT
Bernalillo County
10/26/2023 3:37 PM
KATINA WATSON
CLERK OF THE COURT
Andrea I Gutierrez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**CASE NO:** D-202-CV-2023-08368

**CANDICE ZYBURO and**
**CATHERINE ZYBURO,**

**Plaintiffs,**

**v.**

**NORTH AMERICAN COMPANY FOR**
**LIFE AND HEALTH INSURANCE,**

**Defendant.**

**VERIFIED COMPLAINT FOR BREACH OF LOYALTY, BREACH OF DUTY OF DISCLOSURE, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, UNJUST ENRICHMENT, NEGLIGENT MISREPRESENTATION, FRAUDULENT MISREPRESENTATION, VIOLATION OF THE NEW MEXICO INSURANCE CODE, BREACH OF CONTRACT, REQUEST FOR CONSTRUCTIVE TRUST, AND VIOLATION OF THE UNFAIR TRADE PRACTICES ACT**

**COME NOW** Plaintiffs, Candice Zyburo and Catherine Zyburo, by and through their attorney of record, DeNiro Law, LLC (Vanessa L. DeNiro, Esq. and Kate Jones, Esq.), and hereby file this Complaint for Breach of Loyalty, Breach of Duty of Disclosure, Breach of Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Negligent Misrepresentation, Fraudulent Misrepresentation, Violation of the New Mexico Insurance Code, Breach of Contract, Request For Constructive Trust, and Violation of the Unfair Trade Practices Act, and as grounds therefore state:

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Candice Zyburo, is an individual residing in Nassau County in the State of New York. Candice Zyburo is also the Personal Representative of the Estate of Charles Dennis Zyburo and a survivor beneficiary of the Fixed Index Annuity.

2. Plaintiff, Catherine Zyburo, is an individual residing in Bernalillo County, New Mexico. Catherine Zyburo is also a beneficiary and owner of the Fixed Index Annuity issued effective October 18, 2016.

3. Defendant, North American Company for Life and Health Insurance, is a corporation existing under the laws of the state of Iowa with its principal place of business in West Des Moines, Iowa.

4. The insured party who passed away, Charles Dennis Zyburo (hereafter "Decedent") died on February 18, 2021. At the time of death, Decedent was domiciled in Bernalillo County, New Mexico.

## III. FACTUAL BACKGROUND

5. On or about October 18, 2016, Defendant issued a Fixed Index Annuity (hereafter "Annuity") to Catherine Zyburo and the Decedent, as joint owners. The Annuity issued is governed by an Individual Single Premium Deferred Annuity Contract (hereafter "Annuity Contract").

6. At the time of issuance, Catherine Zyburo (hereafter "Catherine") and the Decedent were married.

7. After issuance of the Annuity, the survivor beneficiary designations were as follows: 100% to the surviving spouse as the primary beneficiary and as contingent, 25% each to Gregory Zyburo, Rosemarie Zyburo, Renee Zyburo, and Candice Zyburo.

8.    The Premium deposited at the time of purchase was $600,742.06.

9.    Catherine and Decedent also purchased a Death Benefit Rider.

10.    The cost of the Rider was 1.2% of the Accumulated Value per year.

11.    Upon the 5th Contract Anniversary, the Death Benefit Rider entitled Catherine Zyburo and Decedent to 140% of the Premium.

12.    Since issuance, Defendant received approximately $40,000.00 as payment for the cost of the Death Benefit Rider.

13.    On or about August 14, 2018, Defendant was notified of Decedent and Plaintiff Catherine Zyburo's impending divorce.

14.    On or about August 16, 2018, nearly a year **before** the divorce was finalized, Defendant purportedly sent a Divorce Settlement Form on a single occasion, requiring it be completed by both Catherine and Decedent.

15.    Upon information and belief, this Divorce Settlement Form was sent to an incorrect address and was not received by either Catherine or Decedent. See **Exhibit A:** *Returned Mail from NAC.*

16.    On August 27, 2018, Catherine Zyburo filed a Verified Petition for Dissolution of Marriage in the Second Judicial District Court, under Case Number D-202-DM-2018-02685.

17.    On July 19, 2019, Catherine and the Decedent were officially divorced.

18.    Pursuant to Article III(1)(E) and (2)(E) of the Marital Settlement Agreement (hereafter "MSA"), the Annuity was to be divided equally. See **Exhibit B:** *Marital Settlement Agreement in Pertinent Part.*

19.    The Decedent's Last Will and Testament was executed on January 27, 2020.

20. The Decedent's Will provided for a specific gift, stating, "An annuity from North American Company policy number 8000299481 **my portion all goes to Candice Melanie Zyburo**." (emphasis added). See **Exhibit C:** *Decedent's Last Will and Testament in Pertinent Part.*

21. On or about January 29, 2020, Decedent submitted an Annuity Beneficiary Change Request to Defendant, seeking to designate Candice Zyburo as sole primary beneficiary. See **Exhibit D:** *Annuity Beneficiary Change Request in Pertinent Part.*

22. This attempted beneficiary change was not accepted by Defendant, but upon information and belief, Defendant never notified Decedent of this decision.

23. Given the totality of circumstances, between the MSA, the Decedent's Will, and the attempted beneficiary change, the intentions for the account were unambiguous: 50% to Catherine and 50% to Candice.

24. The Decedent passed away on February 18, 2021.

25. Candice Zyburo filed an Application for Informal Probate of Will and Appointment of Personal Representative on May 27, 2021 in the Second Judicial District Court under case number D-202-PB-2021-00411. The Court then appointed Candice as Personal Representative of the Estate in an Order of Informal Probate of Will and Appointment of Personal Representative, entered on June 24, 2021.

26. On or about October 5, 2021, counsel for the Personal Representative sent a Demand Letter to Defendant, requesting information and documentation related to the Annuity. See **Exhibit E:** *October 5, 2021 Demand Letter in Pertinent Part.*

27. After multiple inquiries went completely ignored or only partially answered, a Subpoena Duces Tecum, was served upon Defendant on June 23, 2022 in probate case number D-202-PB-2021-00411 for all documentation related to the Annuity.

28. Defendant did not respond to the subpoena until two months later on August 23, 2022.

29. Upon finally receiving documentation in response to the subpoena and after further communication with Defendant, it was discovered that the Defendant never divided the Annuity after the divorce and Defendant expressed uncertainty as to the proper survivor beneficiaries.

30. The Personal Representative, through counsel, continued to diligently and regularly communicate with Defendant to ascertain the Defendant's exact reason for withholding distribution of proceeds and to determine a solution for distribution to occur. This correspondence was primarily with a Claims Specialist named Joseph Crawford, who was assigned to the matter.

31. Counsel for the Personal Representative made multiple requests of Defendant to provide a formal, written position statement to identify with specificity the precise root cause that led Defendant to place a hold on distribution. See **Exhibit F:** *September 7, 2022 Email to Claims Specialist.* On the rare occasions that Defendant chose to respond, it failed to provide any coherent explanation for the hold.

32. On September 13, 2022, approximately a year and a half after Decedent passed away, Defendant belatedly provided the Personal Representative with Indemnification

Agreements for all conceivable beneficiaries to execute. Defendant still neglected to provide an explanation as to why the Indemnification Agreements were even necessary.

33. While coordinating signatures for the Indemnification Agreements, counsel for the Personal Representative contacted Claims Specialist Crawford to confirm several aspects of the Annuity.

34. Specifically, the Personal Representative's counsel requested information regarding the base value of the Annuity, as well as the existence and value of any applicable Riders. See **Exhibit G:** *September 19, 2022 email to NAC.*

35. Defendant's Claims Specialist responded, stating that, "The death benefit value is $654,921.21. There is no death benefit rider on the contract." See **Exhibit H:** *September 20, 2022 email from NAC.*

36. Counsel for the Personal Representative replied, requesting the Claims Specialist check again and provided documentation sent by Defendant in response to the subpoena that corroborated the existence of a Death Benefit Rider. See **Exhibit I:** *September 29, 2022 email to NAC.*

37. On September 30, 2022, the Defendant's Claims Specialist emailed admitting to providing materially inaccurate information and advised that, "[T]his contract does have a GMDB rider. This rider has a benefit base value of $833,940.79. If the listed beneficiary(ies) decide to elect the rider payout, they must all agree to choose the rider payout which must be divided over 5 years." See **Exhibit J:** *September 30, 2022 Email from NAC Claims Specialist.*

38. It is important to note that i) the difference between the benefit base amount and the rider payout is very substantial, a discrepancy of approximately $179,000.00; ii) the Claims

Specialist's instructions for electing the rider payout were sent over a year and a half after the Decedent's death; and iii) there was no mention of or reference to IRC 72(s).

39. In a separate email exchange, clarification and confirmation was sought as to how the rider payout would operate. The Claims Specialist reaffirmed that if the Plaintiffs "... choose the 5 year payout then the value would be based on the rider value of $833,940.79. If they choose another settlement option then the value would be based on the base benefit value of $654,921.21." See **Exhibit K:** *Additional Email Correspondence on September 30, 2022.*

40. Despite being advised that 4 of the 5 Indemnification Agreements required by Defendant had been signed and ongoing efforts were being made to obtain the fifth signature, Defendant filed an Interpleader Action in the US District Court for the Eastern District of New York (Case No. 1:23-cv-1140) on February 10, 2023. No notice of commencement of the interpleader, nor copies of the filings were provided to counsel for the Personal Representative.

41. On February 22, 2023, the fifth and final Indemnification Agreement had been signed and all executed agreements were promptly submitted to Defendant. The Interpleader was voluntarily dismissed shortly thereafter.

42. With the understanding that issues preventing distribution had been resolved and relying on Defendant's previously stated instructions, Plaintiffs filled out a Claimant's Statement form on or about March 29, 2023, each electing the Rider payout option over a period of 5 years.

43. Plaintiffs received a letter dated April 12, 2023, stating for the very first time that the Death Benefit Rider could not be elected purportedly because that settlement option was, "... only available for one year from date of death" and went on further to advise that, "Lump sum is

the only settlement option available at this time." See **Exhibit L:** *April 12, 2023 Correspondence from NAC.*

44. Curiously, the very same April 12, 2023 Letter goes on to state that,

> "This contract has a Death Benefit Rider that will pay the Benefit Base as of the date of death though [sic] a series of equal periodic payments over 5 years at an interest rate of 0%. Your portion of this Benefit Base is $416,970.40. This Benefit Base Amount will be divided over the 5 year period based on a series of equal periodic payments based on a 0% interest rate. If you choose to elect this option all beneficiaries must agree to and elect this option in order to receive this Benefit Base. Since this product offers the Death Benefit Rider that will pay the benefit base if elected, we must receive all requirements from all beneficiaries prior to proceeding with payment."

45. The contradictions in this letter cannot be overstated; on one hand advising the Benefit Base cannot be elected, while simultaneously providing detailed instructions for making that exact election.

46. The April 12, 2023 Letter provided no further information or explanation as to why the Death Benefit Rider payout option could not be elected beyond 1 year from date of death.

47. Counsel for the Plaintiffs contacted Defendant multiple times for a formal explanation, only to be given vague references to an undisclosed section of the Internal Revenue Code ("IRC") and that the IRS would not allow for the 5 year payout option.

48. On or about June 1, 2023, Catherine Zyburo submitted a complaint to the New Mexico Office of Superintendent of Insurance ("OSI").

49. In its Response dated July 13, 2023, Defendant finally provided (despite numerous requests) a detailed explanation of its position and identified the IRC 72(s) as the

reason for the 5 year payout no longer being an available option. See **Exhibit M:** *NAC Response to OSI Complaint.*

50. Catherine Zyburo submitted a Reply on or about August 8, 2023, disputing the Defendant's interpretation of and reliance upon IRC 72(s). The Reply expressed a litany of frustrations and the efforts made to overcome the absurd hurdles imposed by Defendant. See **Exhibit N:** *OSI Reply.*

51. OSI's purview was limited to document review and facilitating dialogue, and therefore closed the file on August 8, 2023, stating that no further action would be taken by their office.

52. Counsel for Plaintiffs sent Defendant a Final Demand Letter on September 5, 2023. This was done as a final, good faith attempt to resolve matters prior to commencing litigation.

53. Defendant responded to the Final Demand Letter on September 29, 2023, which simply restated the contents of its OSI Response.

54. IRC Section 72(s) states,

> "Required distributions where holder dies before entire interest is distributed (1) In general A contract shall not be treated as an annuity contact for purposes of this title unless it provides that— (A) if any holder of such contract dies on or after the annuity starting date and before the entire interest in such contract has been distributed, the remaining portion of such interest will be distributed at least as rapidly as under the method of distributions being used as of the date of his death, and (B) if any holder of such contract dies before the annuity starting date, the entire interest in such contract will be distributed within 5 years after the death of such holder."

55. Despite Defendant's representations, IRC Section 72(s) does not contain any language related to equal payments or a specific number of payments; only that full distribution will occur within 5 years after the date of death.

**III. ARGUMENT**

**COUNT I: BREACH OF DUTY OF LOYALTY**

56. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

56. An insurer assumes a fiduciary obligation toward an insured in matters pertaining to the performance of obligations in the insurance contract. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, *Sanchez v. Allstate Ins. Co.*, 2010 N.M. App. Unpub. LEXIS 79, 15 (Ct. App. Feb. 3, 2010) (internal citations omitted).

57. As a general matter, a fiduciary duty is a duty of loyalty. *McWilliams v. Jensen*, 2015 N.M. App. Unpub. LEXIS 173 (Ct. App. Apr. 6, 2015) (internal citations omitted). Since a fiduciary is obliged to act primarily for another's benefit in matters connected with such undertaking, a fiduciary breaches this duty by placing his interests above those of the beneficiary. *Id.*

58. Defendant's breaches of its fiduciary duty of loyalty include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

   b. Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration; and

c. Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout.

59. Each and all of the above stated acts and omissions constitute breach of Defendant's fiduciary duty to loyalty to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

60. Defendant's breach of its fiduciary duty of loyalty with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT II: BREACH OF DUTY OF DISCLOSURE**

61. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

62. An insurer assumes a fiduciary obligation toward an insured in matters pertaining to the performance of obligations in the insurance contract. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, *Sanchez v. Allstate Ins. Co.*, 2010 N.M. App. Unpub. LEXIS 79, 15 (Ct. App. Feb. 3, 2010) (internal citations omitted).

63. A fiduciary is required to fully disclose material facts and information relating to the fiduciary relationship even if the one to whom the duty is owed has not asked for the information. *Valerio v. San Mateo Enters.*, 2017-NMCA-059, 400 P.3d 275. The duty of disclosure is a hallmark of a fiduciary relationship. *Id.*

64. Defendant's breaches of its fiduciary duty of disclosure include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Failing to disclose to original owners of the Annuity, including Catherine Zyburo, that Defendant required the Divorce Settlement Form to be executed in order to divide the Annuity;

b. Failing to disclose to the original owners of the Annuity, including Catherine Zyburo, that Defendant had not divided the Annuity, despite Defendant having actual knowledge that the owners were divorced and the Annuity was divided pursuant to the Marital Settlement Agreement;

c. Failing to disclose to the original owners of the Annuity, including Catherine Zyburo, that Defendant rejected Decedent's Annuity Beneficiary Change Request, in which Decedent sought to designate Candice Zyburo as sole primary beneficiary of his portion of the Annuity;

d. Failing to timely disclose basic information and documentation related to the Annuity, despite repeated, unequivocal requests for disclosure from Catherine Zyburo, Candice Zyburo and the Undersigned;

e. Failing to timely disclose Defendant's reason for withholding distribution of proceeds, despite repeated and unequivocal requests for disclosure from Catherine Zyburo, Candice Zyburo and the Undersigned; and

  f. Failing to timely disclose that IRC 72(s) allegedly renders Plaintiff's election of the Death Benefit Rider only available to Plaintiffs for one year from Decedent's death.

65. Each and all of the above stated acts and omissions constitute breach of Defendant's fiduciary duty to disclose to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

66. Defendant's breach of its fiduciary duty to disclose with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT III: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

67. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

68. Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement. *Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, 111 N.M. 57, 801 P.2d 639. Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. *Id.*

69. Defendant's breaches of the covenant of good faith and fair dealing include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

a. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

b. Failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration; and

c. Intentionally failing to timely disclose Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout and deprive Plaintiffs of the same.

70. Each and all of the above stated acts and omissions by Defendant have deprived Plaintiffs of the benefit of the Annuity Contract. Therefore, each and all constitute breaches of the implied covenant of good faith and fair dealing as to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

71. Defendant's breach of the implied covenant of good faith and fair dealing with regard to Plaintiffs caused injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT IV: UNJUST ENRICHMENT**

72. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

73. The elements of unjust enrichment are: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Sloane v. Rehoboth McKinley Christian Health Care Servs.*, 2018-NMCA-048, 423 P.3d 18.

74. As a result of Defendant's bad-faith refusal to timely disclose matters materially affecting the Annuity to Catherine Zyburo, Candice Zyburo, and the Undersigned, Defendant has

intentionally prolonged the amount of time in which the Annuity generates revenue. Defendant has been unjustly enriched as a result of the aforementioned acts and omissions and at the expense of Plaintiffs.

75. As a result of Defendant's misrepresentations and refusal to communicate in good-faith regarding Plaintiffs' ability to elect the death benefit rider, Defendant has knowingly benefitted in ways, including, but not limited, to the following:

a. Retaining the original owners', including Catherine Zyburo's, $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider with no consideration conferred on the owners or beneficiaries;

b. Retaining the $179,000.00 discrepancy between the Benefit Base Amount and Death Benefit Rider payout that Plaintiffs are entitled to pursuant to the Annuity Contract; and

c. Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant.

76. Each and all of the above stated acts and omissions constitute unjust enrichment of Defendant at the expense of Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

77. Defendant has been wrongfully enriched at the expense of Plaintiffs, for which they seek restitution within the jurisdictional limits of this Court.

**COUNT V: NEGLIGENT MISREPRESENTATION**

78. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

79.     Negligent misrepresentation requires a failure to exercise ordinary care in obtaining or communicating a statement, or an intent that the plaintiff receives and be influenced by the statement where it is reasonably foreseeable that the plaintiff would be harmed if the information conveyed was incorrect or misleading. *Cobb v. Gammon*, 2017-NMCA-022, 389 P.3d 1058.

80.     Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s) in order to induce Plaintiffs to rely on the same.

81.     Each and all of the above stated acts and omissions constitute negligent misrepresentation by Defendant to Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

82.     As a result of Plaintiffs' reliance on Defendant's negligent misrepresentations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

## COUNT VI: FRAUDULENT MISREPRESENTATION

83.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

84.     A fraudulent misrepresentation claim requires that the injured party show that the other party (1) made a misrepresentation of fact; (2) with the intent to deceive and to induce the injured party to act upon it; (3) and upon which the injured party actually and detrimentally relies. *State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, 321 P.3d 128

85. Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s) in order to deceive Plaintiffs and to induce Plaintiffs to rely on the same.

86. Each and all of the above stated acts and omissions constitute fraudulent misrepresentations by Defendant on Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

87. As a result of Plaintiffs' actual and detrimental reliance on Defendant's false representations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VII: VIOLATION OF THE NEW MEXICO INSURANCE CODE: NMSA § 59A-16-6**

78. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

88. Section § 59A-16-6 of the New Mexico Insurance Code provides that no person shall make or issue, or cause to be made or issued in any manner, any written or oral statement misrepresenting the terms, conditions, benefits or advantages of any policy for the purpose of inducing or attempting or tending to induce any other person to lapse, forfeit, surrender, borrow against, retain, exchange, convert or otherwise deal with or dispose of any policy.

89. Defendant knowingly or recklessly made false representations to Plaintiffs regarding Defendant's interpretation of IRC 72(s), and therefore the statute's affect on the terms, conditions, benefits and/or advantages of the Annuity, in order to to induce Plaintiffs to rely on the same, causing Plaintiffs to lapse, forfeit and surrender their right to elect the Death Benefit Rider.

90. Each and all of the above stated acts and omissions constitute a violation of NMSA § 59A-16-6 by Defendant on Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

91. As a result of Plaintiffs' actual and detrimental reliance on Defendant's false representations, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT VIII: BREACH OF CONTRACT**

92. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

93. In order to prove breach of contract, a plaintiff will be required to prove that (1) there is a contractual obligation; (2) there was a breach of such; and (3) the breach resulted in damages. *Alderete v. City of Albuquerque*, 2015 N.M. App. Unpub. LEXIS 48 (Ct. App. Feb. 23, 2015).

94. Defendant's breach of the Annuity Contract include, but are not limited to, Defendant's refusal to allow Plaintiffs to elect the Death Benefit Rider which Plaintiffs are contractually entitled to and paid $40,000.00 in consideration to Defendant in exchange for.

95. Each and all of the above stated acts and omissions constitute breach of contract by Defendant. Plaintiffs reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

96. As a result of Defendant's breaches of contract, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court.

**COUNT IX: REQUEST FOR CONSTRUCTIVE TRUST**

97. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98. A constructive trust is imposed to prevent the unjust enrichment that would result if the person having the property were permitted to retain it. *Tartaglia v. Hodges*, 2000-NMCA-080, 129 N.M. 497, 10 P.3d 176. The circumstances where a court might impose a constructive trust may involve actual or constructive fraud, duress, undue influence, abuse of a confidence, breach of a fiduciary duty, or similar wrongful conduct. *Id.* More generally, such a trust can be imposed based upon the breach of any legal or equitable duty, or the commission of a wrong. *Id.*

99. As alleged in the preceding sections, Defendant has intentionally prolonged the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned.

100. In order to prevent further unjust enrichment of Defendant, this Court should impose a constructive trust on the Annuity funds.

101. Plaintiffs respectfully request that the Court grant Plaintiffs' request for constructive trust and that the Court grant further relief as is warranted.

**COUNT X: VIOLATION OF THE UNFAIR TRADE PRACTICES ACT**

102. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

103.    According to the Unfair Trade Practices Act, unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful. NMSA § 57-12-3.

104.    Defendant's violations of the Unfair Trade Practices Act include, but are not limited to, the following acts of omissions by Defendant in the course of its performance of obligations in the Annuity Contract:

 a.  Intentionally prolonging the amount of time in which Annuity generates revenue for Defendant through a bad-faith refusal to disclose facts materially affecting the Annuity to Catherine Zyburo, Candice Zyburo or the Undersigned;

 b.  Intentionally failing to timely disclose (i) Defendant's interpretation of IRC 72(s), in order to retain the $179,000.00 discrepancy between the Benefit Base Amount and (ii) Death Benefit Rider payout and the original owners' $40,000.00 payment for the cost of the allegedly now unelectable Death Benefit Rider for no consideration, resulting in a gross disparity between the value received by Plaintiffs and the price paid.

105.    Each and all of the above stated acts and omissions constitute violations of the Unfair Trade Practices Act by Defendant. Plaintiffs reserve the right to plead additional and/or more specific acts and omissions as additional facts become known.

106.    As a result of Defendant's violations of the Unfair Trade Practices Act, Plaintiffs have sustained injury, for which they seek damages within the jurisdictional limits of this Court as well as attorneys fees and costs.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendants and for the following:

a. Special and actual damages as alleged herein and/or proven at trial;

b. Prejudgment interest in the maximum amount allowed by law;

c. Prejudgment interest from the date of the injury through the date of judgment, at the maximum rate allowed by law;

d. Post judgment interest at the maximum rate allowed by law;

e. As a result of Defendant's malicious, willful, reckless, wanton, oppressive, and/or in bad faith actions, punitive damages in an amount to be determined by the Court at trial;

f. Attorneys fees and costs incurred in the prosecution of this action; and

g. Any and all such other and further relief, whether in law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

DENIRO LAW, LLC

By: _/s/ Kate P. Jones_
Kate P. Jones, Esq.
*Attorney for Plaintiffs*
P.O. Box 45104
Rio Rancho, NM 87174
kate@denirolaw.com
Tele: 505.977.8975



North American Company
for Life and Health Insurance
Since 1886

A member of the Sammons Financial Group

August 16, 2018

CATHERINE A ZYBURO

NIXIE 871 FE 1260 0008/24/18
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
BC: 50325090505 *1755-01485-24-05

Re: Annuity Number 8000299481

Dear Catherine A. Zyburo,

On August 14, 2018, we were notified of a pending divorce action to which you are a party. We are writing to provide you with necessary information regarding the effect of a divorce action on your above referenced contract number.

Upon being notified of a divorce action involving one of North American's annuity contract owners, North American's standard procedure is to prevent the movement of any funds until we receive appropriate documentation regarding how the annuity contract is to be handled. This restriction is placed upon the annuity contract for the protection of all parties involved.

The enclosed Divorce Settlement Form, signed by both spouses in front of a notary, is required in order to remove this restriction from your account. Once this documentation is received in good order, North American Company will either appropriately distribute the funds as instructed, and/or remove the restriction if the funds are not being divided.

In the case where we have been notified of a divorce action involving one of North American's annuity contract owners and the parties involved cancel or do not proceed with the action, we require a letter including the notarized signature and date by both parties advising that there is no longer a divorce action and/or the parties have reconciled.

If you have questions, please call us toll-free at 1-866-322-7069. We are available Monday through Thursday from 7:30 am to 5:00pm (CST) and Friday from 7:30 am to 12:30 pm (CST). A service professional within the Customer Contact Department will be happy to take your important call.

Sincerely,

Customer Correspondence
North American Company for Life and Health Insurance

Enclosure (1): Divorce Settlement Form 17432Z

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
7/16/2019 7:43 AM
James A. Noel
CLERK OF THE COURT
Ashley Padilla

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

CATHERINE A. ZYBURO,

Petitioner

vs. No. D-202-DM 2018-02685

CHARLES DENNIS ZYBURO,

Respondent.

# MARITAL SETTLEMENT AGREEMENT

The parties in the above-captioned matter stipulate as follows:

## ARTICLE I: RECITALS

1. This agreement is between Catherine A. Zyburo (Petitioner) and Charles Dennis Zyburo (Respondent).

2. Petitioner currently lives in Albuquerque, New Mexico, and Respondent currently lives in Albuquerque, New Mexico.

3. Petitioner is represented by Allen Giles, Esq, and the Respondent is represented by Matthew Sanchez.

4. The parties were married on November 15, 1975.

5. There are no minor children born of this matter. There are no other children expected to be born within this marriage.

6. The parties no longer live together due to inherently different dispositions and a resultant state of incompatibility.

7. The parties reached this agreement as to their rights and obligations, and a division of their property. Their agreement has been reduced to writing for approval by the Court.

8. Respondent and Petitioner intend, and it is the purpose of this agreement, to make a complete and final agreement of all their claims and to finalize their agreement as to the division of the property, both real and personal, owned by either of them.

**FOR THE REASONS SET FORTH ABOVE**, and in consideration of the mutual covenants and provisions of the parties hereto, Respondent and Petitioner agree as follows:

## ARTICLE II: EFFECTIVE DATE

This agreement shall become binding upon the parties and their respective legal representatives, successors and assigns immediately following the granting of the *Final Decree* in their action for *Dissolution of Marriage*, provided that the provisions of this agreement are approved by the District Court in that action. If the *Final Decree* or approval of the District Court is not granted, the provisions of this agreement have no effect. Petitioner and Respondent agree that a *Final Decree* may be entered in this matter and that the *Dissolution of Marriage* should be granted on the grounds of incompatibility.

## ARTICLE III: DIVISION OF PROPERTY

A compromise distribution of the community property is as follows:

1. Petitioner shall receive as her sole and separate property:

   A. All property owned by her prior to the marriage, and all such items being in her possession at the time of the signing of this agreement;

   B. Gifts given to her and items inherited by her during the marriage, all such items being in her possession;

   C. All savings and checking accounts solely in her name;

   D. The 2005 Honda CRV as her sole and separate property, subject to

any indebtedness thereon;

E. One half of the North American Company annuity, valued as of the date of divorce, with an approximate value of $658,155.67;

F. The Brookhaven 401(k) in her name, valued as of the date of divorce, with an approximate value of $122,000.00, less $33,500 to be given to Husband;

G. The Nebraska Football tickets and wife shall be responsible for all costs associated with the tickets;

H. The house located at 7008 Easton Pl NW in Albuquerque, subject to any indebtedness, encumbrances, or interests by individuals not a party to this case;

I. All life insurance policies insuring Petitioner's life are the sole and separate property of Petitioner;

J. The personal property items listed as Wife's on the attached list of items;

K. All other personal and household items that are in her possession at the time of the signing of this Agreement, including but not limited to all of her personal affects such as clothing, unless listed as Husband's property on the attached list of items.

2. Respondent shall receive as his separate property:

A. All property owned by him prior to the marriage and all such items

being in his possession at the time of the signing of this agreement;

B. Gifts given to him and items inherited by him during the marriage, all such items being in his possession;

C. All savings and checking accounts solely in his name;

D. The 2018 Honda CRV as his sole and separate property, subject to any indebtedness thereon;

E. One half of the North American Company annuity, valued as of the date of divorce, with an approximate value of $658,155.67;

F. $33,500.00 from Petitioner's Brookhaven 401(k);

G. The house located at 10005 Silverton Dr NW in Albuquerque, subject to any indebtedness thereon;

H. All life insurance policies insuring Respondent's life are the sole and separate property of Respondent;

I. The personal property items listed as Husband's on the attached list of items;

J. Husband shall receive the Allstate Settlement Funds as his sole and separate property;

K. All other personal and household items that are in his possession at the time of the signing of this Agreement, including but not limited to all of his personal affects such as clothing, unless listed as Wife's property on the attached list of items.

3. 6246 Nueva Espana Rd NW Property: The parties own a residence located at



EXHIBIT
C

# Will for Adult with Children

*[Do not simply print this form and then fill in the blanks by hand. A will that is a mixture of printed and handwritten text will not be valid. Use your word processor to add the required information, and delete all bracketed instructions, including this one. In the Signature portion, however, you may leave the blank lines in place, where you and your witnesses will enter the required information by hand when the will is signed and witnessed.]*

## Will of __Charles Dennis Zyburo__________________

I, Charles Dennis Zyburo, a resident of Bernalillo County, State of New Mexico, declare that this is my will.

**1. Revocation.** I revoke all wills that I have previously made.

**2. Marital Status.** I am single

**3. Children.** I have the following natural and legally adopted child(ren):

| Name | Date of Birth |
|---|---|
| Candice Melanie Zyburo | [redacted] |
| Gregory Scott Zyburo | [redacted] |
| Rosemarie Christa Zyburo | [redacted] |
| Renee' Michelle Zyburo | [redacted] |

**4. Specific Gifts.** I make the following specific gifts:

An annuity from North American Company policy number 8000299481 my portion all goes to Candice Melanie Zyburo.

I leave $5,000.00 to Each Grandchild

CDZ

EXHIBIT
D

# Annuity Beneficiary Change Request

CLEAR FORM

North American Company for Life and Health Insurance
Mail: P.O. Box 79905, Des Moines, IA 50325-0905
For questions, contact the Claims Department at 877-880-6367.
Completed forms may be faxed to: 877-539-7538.

## I. Contract Holder Information

Annuity Contract Number
8000 299 481

| Owner's Name (first, middle initial, last) | SSN |
|---|---|
| Charles Dennis Zyburo | [redacted] |
| Joint Owner's Name (if applicable) (first, middle initial, last) | SSN |
| | |
| Trust or Corporation Name (if current owner is a Trust or Corporation) | Tax ID Number |
| | |

Owner's Mailing Address
[redacted]

| City | State | ZIP | Phone Number |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted]-7844 |

## II. Beneficiary Change Information

**I hereby revoke all previous beneficiary designations and change the beneficiary(ies) according to Sections IV through VII of this form.**

**The new beneficiary designations are**

☒ Revocable ☐ Irrevocable (If no box is checked, the beneficiary designation will be revocable):

- Irrevocable beneficiary designations require the signature of the irrevocable beneficiary in Section VIII. If you choose an irrevocable beneficiary, written consent is required before any future changes can be made.
- If a Trust is listed as a beneficiary, the Certification of Trust Agreement (form 19306Z) must accompany this form.
- If a Charitable Trust is listed as a beneficiary the Certification of Charitable Trust (267422) must be attached.
- If this form is completed and signed by an Attorney-in-Fact, the Certificate of Power of Attorney Form (19656Z) must accompany this form.
- In order to meet IRS requirements, if there are joint owners, death proceeds are payable upon the death of the first owner. The Death Benefit proceeds will be payable to the owner's primary beneficiary. If the surviving owner is not the owner's primary beneficiary, they will not be entitled to the proceeds upon the death of the first owner.
- If there are joint annuitants, death proceeds are payable upon the death of the second annuitant.
- For an owner driven contract, death proceeds are not payable upon the death of an annuitant therefore, no beneficiary designation is needed.
- This Beneficiary Change Request form meets the Written Notice requirement defined in the annuity contract.
- If you want to designate more beneficiaries than this form allows, fill out the required information on a separate sheet of paper that is signed and dated according to Section VIII of this form. Attach it to this form.
- Please designate if you want the beneficiary designation to be Per Stirpes or Per Capita. If an election is not made then by default it will be Per Capita. Per Stirpes designations require a listing of the children on a separate sheet of paper that is signed and dated. The list must include the children's names, addresses, phone numbers, dates of birth, and social security numbers.
  - Per Stirpes definition: A common way of distributing proceeds where if one or more beneficiaries has died, his or her children share equally in his or her share of the proceeds.
  - Per Capita definition: Proceeds are split amongst the beneficiaries that survive the owner/annuitant. If one of the beneficiaries does not survive the owner/annuitant then the remaining beneficiaries receive the proceeds.
- In order to distribute future annuity proceeds accurately and according to your wishes, provide the current phone number and address for each beneficiary.
- In order to make the requested change we request that the following information be provided: Beneficiary name, SSN, relationship code, and Percentage of Proceeds.

## III. Relationship Code Information

Please use the codes below to fill out the Relationship Code Information in Sections IV through VII.

| | | | | | | |
|---|---|---|---|---|---|---|
| 01 - Spouse | 04- Mother | 06 - Daughter | 08 – Sister | 14 - Stepdaughter | 20 - Granddaughter | 33 – Niece |
| 03 - Father | 05 – Son | 07 - Brother | 13 – Stepson | 19 – Grandson | 32 – Nephew | 55 - Other |

## IV. Owner's Primary Beneficiary Designation

In the event of the owner's death, Death Benefit proceeds are payable to the owner's primary beneficiary. If there are joint owners, the Death Benefit is payable upon the first death.

Beneficiary's Name (first, middle initial, last)

Candice-Melenie Zybura

| SSN | Relationship Code | Birth Date (mm/dd/yyyy) | % of Proceeds* | |
|---|---|---|---|---|
| | 06 | 72 | 100% | ☐ Per Stirpes  ☐ Per Capita |

Beneficiary's Mailing Address (must be completed)

| City | State | ZIP | Phone Number |
|---|---|---|---|
| | | | -4775 |

Beneficiary's Name (first, middle initial, last)

N/a

| SSN | Relationship Code | Birth Date (mm/dd/yyyy) | % of Proceeds* | |
|---|---|---|---|---|
| | | | | ☐ Per Stirpes  ☐ Per Capita |

Beneficiary's Mailing Address (must be completed)

| City | State | ZIP | Phone Number |
|---|---|---|---|
| | | | |

Beneficiary's Name (first, middle initial, last)

N/a

| SSN | Relationship Code | Birth Date (mm/dd/yyyy) | % of Proceeds* | |
|---|---|---|---|---|
| | | | | ☐ Per Stirpes  ☐ Per Capita |

Beneficiary's Mailing Address (must be completed)

| City | State | ZIP | Phone Number |
|---|---|---|---|
| | | | |

Trust (or other non-living entity, e.g., corporation, estate, etc)

| Tax Identification Number | Trust Date | % of Proceeds* |
|---|---|---|
| | | |

*% of Proceeds must equal 100%. Certification of Trust Agreement (form 19305Z) must be attached.

Is this a Charitable Trust? ☐ Yes  ☒ No
If this is a Charitable Trust the Certification of Charitable Trust (form 26742Z) must be attached.

## VIII. Signatures

**Changes will not be valid unless signature section is completed.**

**IMPORTANT NOTICES REGARDING SIGNATURE REQUIREMENTS**

*If this transaction is subject to a community property interest, we strongly recommend that you obtain your spouse's signature on the line below to document his/her consent to this transaction. States that recognize community property interests in property held by married persons include Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin.

You understand and agree that the Company may presume that no community property interest exists if you have not obtained your spouse's signature below. Further, you understand and agree that the Company has no duty to inquire further about any such community property interest. As a result, you agree to indemnify and hold the Company harmless from any consequences relating to community property interests and this transaction.

Note: The term "spouse" includes domestic partner or other partner as permitted by civil union, domestic partnership or similar law.

**If the current owner resides in the state of MA, the signature of a disinterested witness is required. A disinterested person is described as anyone other than a designated beneficiary. An agent/representative may not sign as a disinterested witness.

Owner Charles Dennis Zybura / Charles Dennis Zybura Date 1-29-2020

Joint Owner ______ Date ______

Irrevocable Beneficiary (if any) ______ Date ______

*Current Owner's Spouse ______ Date ______

**Disinterested Witness ______ Date ______

# *DENIRO LAW, LLC*

6300 Riverside Plaza Ln. Suite #100.
Albuquerque, New Mexico 87120
P.O. Box 45104
Rio Rancho, New Mexico 87120
PH: (505) 977-8975
Fax: (505) 750-9836
vanessa@denirolaw.com
www.denirolaw.com
Licenced in the State of New Mexico
Bianca Duran, Associate Attorney
bduran@denirolaw.com

**October 5, 2021**

***Sent Via: fax***
**North American Company**
**ATTN: Claims Department**
**Annuity Service Center**
**P.O. Box 79905**
**Des Moines, IA 50325**
**Fax: 877-586-0249**

**Re: Charles Zyburo, deceased; Contract No. 8000299481**

To Whom It May Concern,

Please be advised that this firm represents Candice Zyburo, the Court appointed Personal Representative of the Estate of Charles Zyburo (hereafter Charles), regarding the above-referenced matter. For the reasons described below, the full benefit value of the subject Annuity should be divided, with fifty (50%) percent disbursed to Charles' ex-wife, Catherine Zyburo, and 50% payable to Charles' Estate.

This letter ultimately serves as a good faith effort to resolve the subject dispute without the need for court intervention, and to gain a better understanding of the information and documentation North American has on file. Accordingly, we are optimistic that an expeditious resolution can be achieved so long as there is a clear understanding of the force and effect of the enclosed divorce filings, which were executed subsequent to the creation of the Annuity.

**FACTUAL HISTORY**

A written agreement is a valid and binding contract enforceable by law so long as the terms of the agreement are legal and consistent with New Mexico State law and, if applicable, the Statute of Frauds. Breach of contract is a legal cause of action and a type of civil wrong in which a binding agreement is not honored by one or more of the parties to the contract by non-performance or non-compliance with terms of the contract. Moreover, when a third party interferes with an existing contractual relationship between other parties, that is another legal cause of action described as tortious interference.

In order to demonstrate there is a tortious interference with an existing contract, the aggrieved party (Plaintiff) claiming a third party (Defendant) contractual interference must demonstrate that; the Defendant had knowledge of the contract; (2) performance of the contract was denied; (3) Defendant played an "...active and substantial part in causing Plaintiff to lose the benefits of his contract; (4) damages flowed from the breached contract; and (5) MFA Defendants induced the breach without justification or privilege to do so." *Clockman v. Marburger*, 2017 WL 1018819, at *2 (N.M. Ct. App. Feb. 15, 2017).

Here, the MSA is a legally binding contract between Charles and Catherine. Therefore, any third-party interference with the terms of that contract constitutes tortious interference under the law when the above elements are met. Moreover, Catherine is bound by the agreement and she must comply with the agreed upon terms which state that the annuity benefits were to be split in 50/50 between Catherine and Charles. Therefore, per the law and facts discussed herein, Charles estate must be distributed his rightful 50% share of the annuity benefits pursuant to the terms of the MSA.

**INFORMATION REQUESTED**

- When was the subject Annuity issued?
- Identify the current value of the Annuity
- Identify the currently designated survivor beneficiaries
- When and how will the Annuity benefits be distributed

**CONCLUSION**

The provisions of the MSA state that the benefits were to be split equally between Charles and Catherine. Additionally, the contents of the January 27, 2020 Will clearly indicate that 50% of the Annuity should be paid to Catherine Zyburo and the remaining 50% to Candice Zyburo. Therefore, the 50% share of Charles Zyburo's Annuity benefits must be distributed to his Estate. Moreover, as the Court appointed Personal Representative of Charles' Estate, Candice is an appropriate person to make these inquiries.

Accordingly, we ask North American Company to provide any and all information related to the subject Annuity, specifically including the above referenced items as well as it's basis for denying proper distribution of benefits to Charles Zyburo's Estate. This will help determine the

Personal Representative's next course of action. If North American Company is unwilling or the exchange of information is otherwise not coordinated within ten (10) business days, we will be required to commence an action in Court, where we will request all remedies available to the Estate of Charles Zyburo including attorney fees and costs.

Very truly yours,

<u>*Bianca M. Duran*</u>
Bianca M. Duran, Esq.

CC: candice zyburo
Enclosures:

- June 24, 2021 Order Appointing Personal Representative
- July 12, 2021 Letters Testamentary
- August 27, 2017 Verified Petition for Dissolution of Marriage
- July 15, 2019 Marital Settlement Agreement
- July 19, 2019 Stipulated Final Decree of Dissolution of Marriage
- January 27, 2020 Last Will and Testament of Charles Zyburo





James Peck <jp@denirolaw.com>

## Charles Zyburo Annuity Policy - Position Statement for Withholding Funds

**James Peck** <jp@denirolaw.com> Wed, Sep 7, 2022 at 7:48 PM
To: jcrawford@sfgmembers.com, "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Mr. Crawford,

I appreciate you reaching out to me this morning. While we await copies of the various Indemnification Letters (reflecting the agreement of 50% to Catherine, 50% to Candice), Vanessa directed me to inquire about one more request.

Based on our previous conversations and after reviewing the documents provided in response to our subpoena, we have a reasonable understanding of North American's hesitation in distributing survivor benefits. However, we have not yet received any official, written explanation as to why the funds are being withheld; no specific discrepancy or provision/requirement under the policy has been identified to substantiate North American's decision to place a hold on disbursement.

While we recognize and respect North American's diligence in ensuring funds are released to the appropriate parties, we are not comfortable conveying its perspective and reasoning without some formal explanation. Accordingly, we request your legal department to prepare a written position statement, detailing North American's assessment of the policy's beneficiary designations and requirements for resolution (i.e. Indemnification Letters and/or Court Order). Again, I am confident there is a mutual understanding in place, but this will considerably help our efforts in articulating the situation to Renee and, should it become necessary, the Judge presiding over the probate case for Mr. Zyburo's Estate.

We sincerely appreciate any assistance you can provide in facilitating this request with the legal department and hope to hear from you soon.

Thank you,

James Peck
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.

 

EXHIBIT
G

James Peck <jp@denirolaw.com>

# Questions on Policy Value - 8000299481 Zyburo

**James Peck** <jp@denirolaw.com> Mon, Sep 19, 2022 at 2:29 PM
To: "Crawford, Joseph" <JCrawford@sfgmembers.com>, "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Joseph,

Thank you again for providing the Indemnification Letters. We are in the process of gathering all the signatures. Still hoping to hear back from the legal department with a formal, written explanation - I understand that may take longer but wanted to send a quick note.

In the meantime, I wanted to confirm a few topics related to the policy itself:

What is the base value of the policy?
Were any add-ons purchased, such as death benefits rider?
If so, what is the value of the benefit(s); and
In what fashion and to whom will it be paid?

Thank you,

**James Peck**
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.





DENIRO LAW
LLC

EXHIBIT
H

James Peck <jp@denirolaw.com>

# Questions on Policy Value - 8000299481 Zyburo

**Crawford, Joseph** <JCrawford@sfgmembers.com> Tue, Sep 20, 2022 at 2:58 PM
To: James Peck <jp@denirolaw.com>, "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Hi James,

The death benefit value is $654,921.21. There is no death benefit rider on the contract.

Thank you

**Joe Crawford |** Claims Specialist

Claims | Sammons Financial

8300 Mills Civic Parkway | West Des Moines, IA 50266 | 877-880-6367

jcrawford@sfgmembers.com | SammonsFinancial.com

[Quoted text hidden]

The information contained in this message is confidential, protected from disclosure and may be legally privileged. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, distribution, copying, or any action taken or action omitted in reliance on it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by replying to this message and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

 

DENIRO LAW
LLC

EXHIBIT
I

James Peck <jp@denirolaw.com>

# Questions on Policy Value - 8000299481 Zyburo

**James Peck** <jp@denirolaw.com> Thu, Sep 29, 2022 at 2:03 PM
To: "Crawford, Joseph" <JCrawford@sfgmembers.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Joe,

We respectfully request that you double check this information, or provide a much more thorough explanation. In response to our subpoena, North American submitted over 430 pages of documents related to the Policy. Included in that paperwork was a letter dated April 28, 2021 (attached) which directly contradicts your last email.

The letter does align with your statement that the Death Benefit value is $654,921.21. However, it goes on to say that the contract **does** have a Death Benefit Rider and lists the Benefit Base as $833,940.79. I acknowledge that we are not experts on North American's policies and procedures and are eager to hear your explanation for this discrepancy, but you simply saying "there is no death benefit rider on the contract" is patently false and completely unacceptable.

Additionally, the attached letter indicates that North American will begin the escheatment process if all requested documents are not received within 6 months. Please confirm that no such action has not and will not start.

Finally, I am still awaiting a formal, written explanation from the legal department describing their decision to withhold distribution. I am sure you would agree that we and our client have been extraordinarily patient throughout this entire process, but frustrations are mounting, so please do what you can to facilitate these requests in a timely fashion.

Thank you,

DENIRO LAW

**James Peck**
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.
[Quoted text hidden]

**April 28, 2021 Notice from North American.pdf**
217K





James Peck <jp@denirolaw.com>

# Questions on Policy Value - 8000299481 Zyburo

**Crawford, Joseph** <JCrawford@sfgmembers.com> Fri, Sep 30, 2022 at 9:01 AM
To: James Peck <jp@denirolaw.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Hi James,

Thank you for bringing this to my attention. I apologize for the wrong information, this contract does have a GMDB rider. This rider has a benefit base value of $833,940.79. If the listed beneficiary(ies) decide to elect the rider payout, they must all agree to choose the rider payout which must be divided over 5 years.

The escheatment process is was put on hold for this contract back in January.

I will follow up with our legal department today regarding your request for a formal explanation.

Thanks for all your work on this James. Please let me know if there is anything else I can help with.

[Quoted text hidden]
[Quoted text hidden]



DENIRO LAW
LLC

EXHIBIT
K

James Peck <jp@denirolaw.com>

# Questions on Policy Value - 8000299481 Zyburo

**James Peck** <jp@denirolaw.com> Fri, Sep 30, 2022 at 9:48 AM
To: "Crawford, Joseph" <JCrawford@sfgmembers.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Joe,

I appreciate you getting back to me, but please understand that this reduces our confidence in North American, which has a fiduciary duty to provide complete and accurate information; this was a $179,000.00 discrepancy that we had to bring to your attention. Our client cannot help but wonder if any other details have been overlooked. In the meantime, just a few follow-up questions to ensure we have a correct understanding of the current situation and the process moving forward.

1. Will any of this impact the Indemnification Letters at all? They currently reflect the scenario of 50% to Catherine and 50% to Candice, with no specific dollar amounts identified. My hope is that we will not have to restart this cumbersome task of collecting various signatures.

2. Assuming we gather all the necessary signatures on whatever version of the Indemnification Letter that may be required (based on question above), Catherine and Candice then have the options of: A) receiving a one-time, lump sum for their respective 50% of the Policy's base value $654,921.21 (approx $327,460.60 each); or B) they can elect for the rider payout, which would still represent a 50/50 split, but based on the larger amount of $833,940.79 with payments drawn out over 5 years ($833,940.79 / 2 = $416,970.40; then divided by 5 yrs, Catherine and Cadice would each receive approx $83,394.08 annually over a 5 year period)

- Essentially, they have to decide if they want less money, quicker or more money, but over a longer period of time. Is that an accurate assessment?

3. Once the paperwork is completed and an election has been made, is there an estimate on when funds will be disbursed? If they elect the GMDB rider, is there an additional waiting period or steps before receiving the first of 5 installments?

4. Do you require hardcopies of the executed Indemnification Letters? The plan right now is for all the signed/notarized letters to be sent back to my office first so that they can be submitted to North American all at once, either by email or certified mail. Please let me know if this will be an issue, we are just wanting to avoid the risk of 5 different envelopes floating around in the mail.

Thank you,

DENIRO LAW
LLC

James Peck
Senior Paralegal
505-697-2861 | jp@denirolaw.com
PO Box 45104 Rio Rancho, NM 87174
6300 Riverside Plaza Lane Ste 100 NW Albuquerque, NM 87120

THE UNAUTHORIZED DISCLOSURE OR INTERCEPTION OF THIS EMAIL IS A FEDERAL CRIME. See 18 U.S.C. § 2517(4). This e-mail is intended only for the use of those to whom it is addressed and may contain information which is privileged, confidential and exempt from disclosures under the law. If you have received this email in error, do not distribute or copy it. Return it immediately with attachments, if any, and notify the office by telephone at (505)977-8975.

[Quoted text hidden]



DENIRO LAW
LLC

James Peck <jp@denirolaw.com>

## Questions on Policy Value - 8000299481 Zyburo

**Crawford, Joseph** <JCrawford@sfgmembers.com> Fri, Sep 30, 2022 at 11:04 AM
To: James Peck <jp@denirolaw.com>
Cc: "Vanessa L. DeNiro" <vanessa@denirolaw.com>

Hi James,

Thank you for your email. Again I apologize for the incorrect rider information.

1. the death benefit/rider value does not impact the indemnification agreements.

2. You are correct and your calculations are correct. If they choose the 5 year payout then the value would be based on the rider value of $833,940.79. If they choose another settlement option then the value would be based on the base benefit value of $654,921.21.

3. Once the election is made and the claim paperwork is received in good order then there is just the standard processing time which is typically 3-5 days. There is no waiting period for the first payment.

4. We do not need the originals of the indemnification agreements. We can accept a copy and you can email them to me for handling.

Please let me know if there is anything else I can help with.

Thank you

**Joe Crawford** | Claims Specialist

Claims | Sammons Financial

8300 Mills Civic Parkway | West Des Moines, IA 50266 | 877-880-6367

jcrawford@sfgmembers.com | SammonsFinancial.com

**From:** James Peck <jp@denirolaw.com>
**Sent:** Friday, September 30, 2022 8:48 AM
**To:** Crawford, Joseph <JCrawford@sfgmembers.com>
**Cc:** Vanessa L. DeNiro <vanessa@denirolaw.com>
**Subject:** Re: [EXTERNAL] Questions on Policy Value - 8000299481 Zyburo

 

EXHIBIT
L

AMERICAN.

[illegible]

CATHERINE ZYBURO
[illegible] SILVERTON DR NW
ALBUQUERQUE, NM [illegible]

Re: [illegible] Zyburo - Deceased
Contract [illegible] Non-Qualified

Dear Ms. Zyburo

On behalf of North American Company for Life and Health please accept our sincere condolences which we wish extended to you and your family. The documents listed below are required prior to settlement of the claim.

1. Completion of the Claimant Statement by the Beneficiary (enclosed).
2. The settlement option selected was only available for one year from date of death. Lump sum is the only settlement option available at this time.

If you are sending in documents separate from the Claimant Statement please ensure the number is indicated on your paperwork to ensure efficient handling of your documents.

Please be aware that the Contract mentioned above is a Non-Qualified Annuity Contract. Your portion of the Death Benefit as of [illegible] is $[illegible]. The amount of $[illegible] is reportable as a taxable distribution on form 1099-R. Please consult your tax professional relating to any questions about the taxable amount.

This contract has a Death Benefit Rider that will pay the Benefit Base as of the date of death through a series of equal periodic payments over 5 years at an interest rate of [illegible]. Your portion of this Benefit Base is $[illegible]. This Benefit Base amount will be divided over the 5 year period based on a series of equal periodic payments based on a [illegible] interest rate. If you choose to elect this option all beneficiaries must agree to and elect this option in order to receive the Benefit Base.

Since this product offers the Death Benefit Rider that will pay the benefit base if elected, we must receive all requirements from all beneficiaries prior to proceeding with payment.

As soon as we receive all documents, we will give your claim our prompt attention. Please be advised that elections made on the Claimant Statement are a full and final settlement once proceeds have been processed.

Please allow 10 calendar days for the review of any documents submitted for processing. If you have submitted the final requirement for a Claim, the Claim will be processed in 10 calendar days. Processing time may be extended if additional review or documentation is required.

We invite you to visit our website at https://www.northamericancompany.com/annuity-claim-forms for helpful brochures that provide additional information on settlement options that may be available to you, frequently asked questions about the claim process and electronic versions of the Claims forms. Copies of the documents found on our website can be obtained by calling our Claims Department at the number listed below.

If you have questions, please call us toll-free at 877-880-6367. We are available Monday through Thursday from 7:30 am to 5:00 pm (CT) and Friday from 7:30 am to 12:30 pm (CT). A service professional within the Claims Department will be happy to take your important call.

Sincerely,

Claims Department

NORTH AMERICAN
A Sammons Financial Company

EXHIBIT
M

July 13, 2023

***Sent via secure email: marella.quintana@osi.nm.gov***

Marella Quintana
New Mexico Office of Superintendent of Insurance
1120 Paseo de Peralta, Room 428
Albuquerque, NM 87501

Re: Your File Number: 179561
Contract Number: 8000299481 (the "Contract")
Contract Owner: Catherine Zyburo; Charles Zyburo (the "Owner(s)")
North American Company for Life & Health Insurance ("North American" or "the Company")
NAIC Number: 66974

Dear Ms. Quintana,

North American has received the New Mexico Office of Superintendent of Insurance (the "Office")'s recent correspondence dated June 29, 2023 regarding the above referenced Contract. We appreciate the opportunity to respond to Ms. Zyburo's concerns.

The Company understands Ms. Zyburo's submission to allege delays in the claims process and state the Company will not issue the death benefit associated with the Contract's Benefits Rider. After a thorough review, we would like to provide the following discussion of the Company's position on this matter.

***Contract Background***

Contract 8000299481 is a Fixed Index Annuity issued effective October 18, 2016 to joint owners Catherine Zyburo and Charles Zyburo. At the time of issue, Ms. Zyburo and Mr. Zyburo were married. The Contract was issued with a Benefits Riders which has its own death benefit amount subject to the Contract's terms and conditions.

On August 14, 2018, the writing agent informed us the Owners were going through a divorce. In order to determine how the annuity was to be handled, we required a completed form signed and notarized by both parties. Per our normal process, we restricted the account to prevent the movement of any funds until we received the appropriate documentation. Notification dated August 16, 2023 was sent to both respective Owners.

North American did not receive the proper documentation to proceed with any distribution or ownership and beneficiary changes.

Mr. Zyburo submitted a beneficiary change form on February 3, 2020 to change the sole primary beneficiary to the Contract to Candice Zyburo and the sole contingent beneficiary to Rosemarie Zyburo. However, due to the pending divorce, this request was not processed. The last valid beneficiary designation (submitted and signed by both Owners) was 100% to the surviving spouse as the primary beneficiary and as contingent, 25% each to Gregory Zyburo, Rosemarie Zyburo, Renee Zyburo, and Candice Zyburo.



A Sammons Financial Company

***Determining the Proper Beneficiaries***

According to our records, Mr. Zyburo passed away February 18, 2021. The Company was notified March 23, 2021 and sent a claimant statement to Ms. Zyburo to process the claim. During the claim process, Ms. Zyburo submitted the official Decree of Dissolution of Marriage for review on May 28, 2021. This document indicated:

> 1. *[Ms. Zyburo] shall receive as her sole and separate property:*
>
> ...
>
> *E. One half of the North American Company annuity, valued as of the date of divorce, with an approximate value of $658,155.67...*

However, the decree did not specify in what way the Contract should have been divided. Additionally, because the divorce ended the marriage, the beneficiary designation of surviving spouse may have been revoked. The Company could not interpret the court's order and did not want to be placed in a position of double liability concerning the death benefit proceeds. Therefore, the Company was not able to proceed without additional direction.

In an attempt to resolve this issue, the Company asked all relevant parties—Catherine Zyburo, Candice Zyburo, Gregory Zyburo, Rosemarie Zyburo, and Renee Zyburo—whether they could reach an agreement as to how the death benefit proceeds should be distributed. As a result, we began working with the parties to determine if an amicable agreement could be reached.

The Company was later notified the parties had come to an agreement of their own accord and was asked to proceed accordingly. The arrangement was that the death benefit proceeds were to be split evenly between Catherine Zyburo and Candice Zyburo. To confirm the parties' understanding and acceptance of this arrangement, the Company sent Letters of Instruction and Indemnity to that effect and requested signed and notarized copies back from each party.

On March 9, 2023, the Company had received all the agreements and proceeded with the claim with Catherine Zyburo and Candice Zyburo as equal beneficiaries.

***Death Claim Amount***

As stated previously, the Contract was issued with a Benefits Rider. Per the Contract, this Rider may provide a higher death benefit amount called the Benefit Base. The Benefit Base, if chosen by all beneficiaries, will be paid out in a series of equal periodic payments over 5 years at an interest rate of 0%. The specification page of the Rider notes:

> *We will interpret the provisions of this Benefits Rider so that Your Contract, as endorsed by this Rider, is intended to comply with Section 72(s) of the Internal Revenue Code, or as later amended, as applicable.*

When the beneficiaries had returned the claimant statement, they selected the Benefit Base option. However, we could not proceed with the selected option. Please note the Company must comply with all applicable Internal Revenue Service ("IRS") rules and regulations when servicing the Contract. Internal Revenue Code Section 72(s) provides:

> *(s) Required distributions where holder dies before entire interest is distributed*
>
> *(1) In general*

NORTH AMERICAN.
A Sammons Financial Company

*A contract shall not be treated as an annuity contact for purposes of this title unless it provides that—*

*(A) if any holder of such contract dies on or after the annuity starting date and before the entire interest in such contract has been distributed, the remaining portion of such interest will be distributed at least as rapidly as under the method of distributions being used as of the date of his death, and*

*(B) if any holder of such contract dies before the annuity starting date, the entire interest in such contract will be distributed within 5 years after the death of such holder*

This is also codified in the Contract's terms. Section 8.1 of the Contract regarding the death benefit reads:

*If the Owner dies and the surviving spouse is not the Owner's sole beneficiary, any death benefit will:*

1) *Be distributed to the applicable Owner's Beneficiary within 5 years from the death of the Owner, or*
2) *If requested by the Owner's Beneficiary, be distributed over a period not extending beyond the life expectancy of the Owner's Beneficiary, provided such distributions begin no later than one year after the date of death or a later date as prescribed by Internal Revenue Service regulations.*

Approximately two and a half years have passed since the death claim was opened. The Company cannot, per IRS code, offer the benefit base as the five annual payments would extend past the IRS-imposed deadline of five years past the date of death. Additionally, the Company cannot allow the beneficiaries to select a fixed period payment option as more than one year has passed since the date of death. In order to comply with federal regulations, the Company can only offer a lump sum payment. The Benefit Base amount is not available as a lump sum payment, so the complainant cannot select it as her settlement option.

****************************

North American regrets Ms. Zyburo's dissatisfaction. However, we are not in a position to grant her request for relief. We cannot pay out the Benefit Base in the contractual five year period and remain in compliance with the Internal Revenue Code; consequently, we cannot allow the beneficiaries to select it as their distribution option. At this time, the beneficiaries can only select the lump sum payment option.

We trust the above information is helpful to the Office's review of this matter. However, should you have questions or require any additional documentation, please feel free to contact me.

Sincerely,

Catrina J. Waite, Compliance Investigations
Senior Compliance Consultant
cwaite@sfgmembers.com
515-440-5564 ext. 35564

EXHIBIT
N

**August 9, 2023**

**Reply to North American's Response to the OSI Complaint**

Dear Ms. Quintana,

The following is my reply to North American's response to my Complaint with OSI. I've been frustrated by North American since the claim process started, but I just figured it was bureaucratic disorganization. **Now I realize they were intentionally delaying, causing confusion, giving vague or incomplete information in order to take advantage of me.** North American clearly did this so they wouldn't have to pay out the Death Benefit Rider/Benefit Base, which is 140% of the initial premium or around $230,000 of additional funds. If they pay only the Death Benefit of $654,921.21, they pay just the initial premium plus interest accrued; nothing out of North American's pocket.

Charles and I paid annual fees to have the Rider, so it isn't fair that North American received profit from us over the years and now refuse to uphold their end of the bargain. We paid about $40,000 for a feature/service that supposedly cannot be used. In addition, North American sprung this alleged IRS requirement on us only AFTER the period in which we could make our desired election supposedly had elapsed. Up until then, they repeatedly represented that the 5-year election was available.

I've done my research and know that North American has fiduciary duties towards me that have been violated. When I notified North American of Charles' death, they knew we were divorced and received a copy of the divorce agreement, which says I get half of the annuity. Charles tried listing Candice Zyburo as beneficiary for his half of the annuity and North American made us all sign an agreement saying 50% to Candice and 50% to me. During the claim process, North American unilaterally imposed confusing and onerous requirements causing further delay, even though the distribution was crystal clear according to the divorce agreement that I provided to them. What's more, this "5-year rule" was never mentioned until *after* everyone signed the document giving North American "Indemnity." North American's sudden citation to this never-before-mentioned "5-year rule" makes the real purpose of their burdensome indemnification

requirements obvious.

North American makes it sound like the IRS won't let them pay the rider benefit base but the rule quoted in North American's response letter doesn't say anything about equal payments. The portion of the contract quoted also says nothing about equal payments. Both only say the money has to be fully distributed within 5 years after death. Charles passed away on February 18, 2021, so it has not been 5 years. **North American can pay out the benefit base and still be in compliance with IRS code.**

I believe that North American purposely kept me confused (even though all the paperwork provided clearly showed 50% to Candice and 50% to me) and made me jump through all kinds of hoops just to cause enough delay so they could avoid paying the rider/benefit base. How can they get paid (~$40k) for the cost of the rider and then not follow through on their obligation? They have sent me several letters recently saying I can still pick the death benefit rider, why would they do that if it isn't an option anymore?

I am nearly 75 years old and feel completely taken advantage of by North American because they purposely caused delay and withheld information about the "5-year rule" to me until it was too late for me to make my desired election. In fact, I didn't ever get a thorough explanation from North American until I did the OSI complaint.

Please help me figure this out because they've never given me a straight answer until your office got involved. I'm losing a lot of money that I am entitled to and I need your help dealing with them or recommendation on what to do next because they are taking zero responsibility and not doing their fiduciary duty.

Sincerely,

# EXHIBIT C

# Candice Zyburo, et al.,

# v.

# North American Company for Life and Health Insurance

## CASE DETAIL

| CASE # | CURRENT JUDGE | FILING DATE | COURT |
|---|---|---|---|
| D-202-CV-202308368 | Ortega, Lisa Chavez | 10/26/2023 | ALBUQUERQUE District |

## PARTIES TO THIS CASE

| PARTY TYPE | PARTY DESCRIPTION | PARTY # | PARTY NAME |
|---|---|---|---|
| D | Defendant | 1 | NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE |
| P | Plaintiff | 1 | ZYBURO CANDICE |
| | | ATTORNEY: JONES KATE | |
| | | ATTORNEY: DEVINE D'MARCOS P. | |
| | | ATTORNEY: DENIRO VANESSA L. | |
| P | Plaintiff | 2 | ZYBURO CATHERINE |
| | | ATTORNEY: DENIRO VANESSA L. | |

## CIVIL COMPLAINT DETAIL

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 10/26/2023 | 1 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Bad Faith |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 10/26/2023 | 2 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Misrepresentation, Fraud |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 10/26/2023 | 3 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Breach of Contract |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 10/26/2023 | 4 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Trade Practices Act |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

## REGISTER OF ACTIONS ACTIVITY

| EVENT DATE | EVENT DESCRIPTION | EVENT RESULT | PARTY TYPE | PARTY # | AMOUNT |
|---|---|---|---|---|---|
| 11/06/2023 | SUMMONS RETURN | | P | 1 | |
| 10/30/2023 | | | | | |

| | | | |
|---|---|---|---|
| 10/26/2023 | ARB: CERT NOT SUBJECT | P | 1 |
| 10/26/2023 | OPN: COMPLAINT | | |

## JUDGE ASSIGNMENT HISTORY

| ASSIGNMENT DATE | JUDGE NAME | SEQ # | ASSIGNMENT EVENT DESCRIPTION |
|---|---|---|---|
| 10/26/2023 | Ortega, Lisa Chavez | 1 | INITIAL ASSIGNMENT |

# EXHIBIT D

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**CANDICE ZYBURO and**
**CATHERINE ZYBURO,**

**Plaintiffs,** **CASE NO.: D-202-CV-2023-08368**

**v.**

**NORTH AMERICAN COMPANY FOR**
**LIFE AND HEALTH INSURANCE,**

**Defendant.**

**NOTICE OF FILING OF NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT on December 6, 2023, Defendant North American Company for Life and Health Insurance ("North American") in the above-captioned action removed this action to the United States District Court for the District of New Mexico by filing a Notice Of Removal in that Court. A copy of the Notice Of Removal is attached hereto as "Exhibit A." Accordingly, the Second Judicial District Court, County of Bernalillo, State of New Mexico may proceed no further unless and until this case is remanded.

Dated: December 6, 2023

Respectfully submitted,

*/s/ Nury H. Yoo*

Nury H. Yoo (142457)
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: +1 415 591 7550
Facsimile: +1 415 591 7510
*nury.yoo@faegredrinker.com*

*Attorney for Defendant North American Company for Life and Health Insurance*

**CERTIFICATE OF SERVICE**

I certify that on December 6, 2023, I filed the foregoing Notice Of Filing Notice Of Removal via the Court's electronic filing system, which will give notice to all parties and their counsel of record. I also sent a copy of the foregoing U.S. mail and electronic mail to:

Kate P. Jones
DeNiro Law, LLC
PO Box 45104
Rio Rancho, New Mexico 87174
Tel: (505) 977-8975
*kate@denirolaw.com*

*Attorney for Plaintiffs*

*/s/ Nury H. Yoo*

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Candice Zyburo and Catherine Zyburo

(b) County of Residence of First Listed Plaintiff: Nassau, New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Kate P. Jones, DeNiro Law, LLC, PO Box 45104, Rio Rancho, New Mexico 87174, Tel: (505) 977-8975

**DEFENDANTS**

North American Company for Life and Health Insurance

County of Residence of First Listed Defendant: Dallas, Iowa
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Jesse Linebaugh, Faegre Drinker Biddle & Reath LLP, 801 Grand Ave. 33rd Floor, Des Moines, Iowa 50309, Tel: 515-248-9000

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* — Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [X] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*
- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1335

Brief description of cause:
Action related to payment of an annuity contract.

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ $179,000.00+

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: Dec 6, 2023

SIGNATURE OF ATTORNEY OF RECORD: /s/ Jesse Linebaugh

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
12/6/2023 2:58 PM
KATINA WATSON
CLERK OF THE COURT
Marilyn D Crane

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**CANDICE ZYBURO and**
**CATHERINE ZYBURO,**

**Plaintiffs,** **CASE NO.: D-202-CV-2023-08368**

**v.**

**NORTH AMERICAN COMPANY FOR**
**LIFE AND HEALTH INSURANCE,**

**Defendant.**

**NOTICE OF FILING OF NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT on December 6, 2023, Defendant North American Company for Life and Health Insurance ("North American") in the above-captioned action removed this action to the United States District Court for the District of New Mexico by filing a Notice Of Removal in that Court. A copy of the Notice Of Removal is attached hereto as "Exhibit A." Accordingly, the Second Judicial District Court, County of Bernalillo, State of New Mexico may proceed no further unless and until this case is remanded.

Dated: December 6, 2023

Respectfully submitted,

*/s/ Nury H. Yoo*

Nury H. Yoo (142457)
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: +1 415 591 7550
Facsimile: +1 415 591 7510
*nury.yoo@faegredrinker.com*

*Attorney for Defendant North American Company for Life and Health Insurance*

**CERTIFICATE OF SERVICE**

I certify that on December 6, 2023, I filed the foregoing Notice Of Filing Notice Of Removal via the Court's electronic filing system, which will give notice to all parties and their counsel of record. I also sent a copy of the foregoing U.S. mail and electronic mail to:

Kate P. Jones
DeNiro Law, LLC
PO Box 45104
Rio Rancho, New Mexico 87174
Tel: (505) 977-8975
*kate@denirolaw.com*

*Attorney for Plaintiffs*

*/s/ Nury H. Yoo*