IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CANDICE ZYBURO AND
CATHERINE ZYBURO,

     Plaintiffs,

vs.                               No. 1:23-cv-01083-PJK-SCY

NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE,

     Defendant.

MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING
IN PART DEFENDANT'S MOTION TO DISMISS

THIS MATTER comes on for consideration of Defendant North American

Company for Life and Health Insurance's Motion to Dismiss Plaintiffs' First Amended

Complaint filed March 15, 2024. ECF No. 23. Upon consideration thereof, the court

finds that the motion should be denied in part and granted in part.

## **Background**

This lawsuit arises out of a dispute over an annuity contract. In September of

2016, former spouses Charles Zyburo (Charles or Decedent) and Catherine Zyburo

(Catherine) replaced their MassMutual annuity with a North American annuity contract

(the Annuity). ECF No. 18 at ¶ 9. The cost to surrender the MassMutual annuity was

$14,074.56, and the premium deposited for the North American annuity was

$600,742.06.  Id. at ¶ 85.  They also purchased a Benefits Rider for $39,187.34.  Id. at ¶¶

14, 85.  Both Charles and Catherine are listed as owners and annuitants on the Annuity.

ECF No. 18-3 at 3.  The charge for the Benefits Rider was 1.2% applicable on each

contract anniversary.  ECF No. 18 at ¶ 15.  The Death Benefit Rider may provide for a

higher death benefit (called the "Benefit Base") at the date of death.  Id. at ¶ 16.  The

Annuity Contract offered the beneficiaries two distribution options:

> **Option 1:** Benefit Base as of the date of death paid out in a series of equal
> periodic payments over 5 years at an interest rate of 0% with the first
> payment made upon notification of death; or
> **Option 2:** Payable as a lump sum: Premium on the Benefits Rider Issue
> Date, provided no partial surrenders (other than for Benefits Rider Costs)
> have been taken since the Benefits Rider Issue Date.

Id. at ¶¶ 20–22.  The Annuity Contract stated that the Benefits Rider would be

interpreted in a manner that renders the Annuity Contract compliant with § 72(s)

of the Internal Revenue Code (I.R.C.) (codified at 26 U.S.C. § 72(s)).  Id. at ¶ 22

n.1.

When Catherine and Charles divorced in July 2019, Catherine notified

North American that the Annuity was to be divided equally.  Id. at ¶ 32–33.  On

January 27, 2020, Charles executed his Last Will and Testament, leaving his half

of the Annuity to Candice Zyburo (Candice).  Id. at ¶ 37.

Charles died on February 18, 2021.  Id. at ¶ 43.  On the date of his death,

the Benefit Base was valued at approximately $833,940.80.  Id. at ¶ 16.  Candice

filed an application for informal probate on May 27, 2021, and was subsequently

appointed as personal representative in the probate proceeding.  Id. at ¶ 51.  On

July 15, 2021, and July 26, 2021, Plaintiffs Candice and Catherine (respectively)

informed North American's agent that Candice chose the settlement option to have

the Base Benefits disbursed over the five-year plan and Catherine selected the

settlement option to have the Base Benefits paid out over a period of time.  Id. at

¶¶ 54–55.  As part of a probate proceeding, Plaintiffs subpoenaed documents

relating to the Annuity on June 23, 2022, and learned two months later that North

American did not divide the Annuity after the divorce and was uncertain as to the

beneficiaries.  Id. at ¶¶ 61–63.

Accordingly, on September 13, 2022, North American sought signatures for

Indemnification/Release Agreements from all potential beneficiaries.  Id. at ¶ 67.

Meanwhile, North American's Claims Specialist confirmed that the value of the

five-year distribution option would be based on the Death Benefit Rider's value of

approximately $833,940.79, and the value of the other settlement option as a lump

sum would be $654,921.21.  Id. at ¶ 72.  The monetary difference between these

options was $179,019.59.  Id. at ¶ 73.

Plaintiffs were initially unable to obtain a non-beneficiary heir's signature

due to her hospitalization, and North American filed an Interpleader in the Eastern

District of New York.  Id. at ¶¶ 74–75.  The Interpleader was dismissed after the

signature was obtained on February 22, 2023.  Id. at ¶ 76.  Shortly thereafter,

Plaintiffs each submitted a Claimant Statement to North American, indicating that

they selected the five-year distribution option.  Id. at ¶ 77.  On April 12, 2023,

more than two years after Charles's death, North American told Plaintiffs that the

Death Benefit Rider option could not be selected because that option was available only for one year from the date of Charles's death. Id. at ¶ 78. The lump sum was the only available settlement option. Id. On July 13, 2023, North American explained that § 72(s) of the I.R.C. was what made the five-year distribution option no longer available. Id. at ¶ 81. North American maintained that Plaintiffs could only receive the lump sum amount of $654,921.21 (with an accumulation balance of $54,179.15), which would also presumably be subject to greater income tax consequences than the five-year distribution. Id. at ¶¶ 73, 85.

Specifically, in a July 13, 2023 response to the New Mexico Office of Superintendent of Insurance, North American explained that on March 9, 2023, it had all necessary documents to proceed with the claim of Catherine and Candice as beneficiaries. Id. at ¶ 81; see also ECF No. 18-39. North American explained that the five-year payout option was now unavailable because, under I.R.C. § 72(s), such a payout would extend beyond five years from Charles's date of death, and a fixed period payment option was unavailable because more than one year had passed since Charles's date of death and payments had not commenced within that time. ECF No. 18-39 at 3.

Plaintiffs filed an action in state court with a variety of claims against North American including (1) breach of fiduciary duty of loyalty and disclosure, (2) negligent misrepresentation and fraudulent misrepresentation, (3) unjust enrichment, (4) breach of contract and breach of the implied covenant of good faith and fair dealing, (5) violation of the New Mexico Insurance Code (NMSA

§ 59A16-16) and Unfair Insurance Practices Act, and (6) violation of the Unfair

Trade Practices Act.  ECF. No. 1-1 at 10–20; ECF No. 18 at 23–37.  North

American removed the action to federal court based on diversity of citizenship

jurisdiction.  ECF No. 1.

Plaintiffs seek a constructive trust for the amount they claim is due under

the Annuity or, alternatively, to require North American to deposit $833,940.80 in

the court registry, pre-judgment interest, attorneys' fees, and punitive damages.

ECF No. 18 at 37–39.  At a status conference held on February 27, 2025, the

parties agreed that North American would deposit a lower benefit amount (the

funds not in dispute) into the court registry.  See ECF No. 35.

North American filed a timely Motion to Dismiss Plaintiffs' First Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 23.  Plaintiffs responded

to the motion, and North American filed a reply.  ECF Nos. 27, 29.  For the

reasons below, North American's Motion to Dismiss Plaintiffs' First Amended

Complaint is granted in part and denied in part.

## Discussion

Plaintiffs need only state a claim that is plausible to survive a motion to dismiss.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Well-pled factual allegations are

accepted as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court views factual

allegations in the complaint in the light most favorable to the non-movant, but may

disregard legal conclusions cast as factual allegations.  Id. at 678–79. Plausibility is met

where the pleaded factual content "allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id.

In resolving a 12(b)(6) motion, the court typically only examines the complaint.

Brown v. City of Tulsa, 124 F.4th 1251, 1263–64 (10th Cir. 2025).  However, courts

have "broad discretion" in determining whether to consider items beyond the pleadings.

Broker's Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir.

2017).  A court may consider (1) documents incorporated by reference in the complaint,

(2) documents to which the complaint refers, and which are central to Plaintiffs' claims,

if the authenticity of those documents is undisputed, and (3) judicially-noticed

documents.  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).  Accordingly, to

resolve the pending motion, the court has also considered the Annuity Contract (ECF No.

18-3), the Indemnification/Release Agreements (ECF No. 24-1, referenced in ECF No.

18 at ¶¶ 67, 74–76), and North American's response to the New Mexico Superintendent

of Insurance (ECF No. 18-39, referenced in ECF No. 18 at ¶ 81).

**I.      Section 72(s) of the Internal Revenue Code**

The crux of the parties' dispute is whether Plaintiffs are entitled to the

(approximately) $179,019.59 difference between the two distribution options, or whether

Plaintiffs are only eligible for a lump sum, which may have higher tax consequences.

See ECF No. 18 at ¶ 73.  As the court reads the complaint and motion, an understanding

of I.R.C. § 72(s) is essential.  See id. at 18–23; ECF No. 24 at 7–8.

Section 72(s)(1) was enacted "to prevent continued deferral of the inside build-up

under annuity contracts after the death of a contract holder."  Mark E. Griffin & Alison

R. Peak, IRS Applies Strict Reading of Section 72(s), 12 Taxing Times 44, 44 (2016)

(quotations omitted).  That section generally provides that a non-qualified annuity

contract will not be treated as an annuity contract for federal tax purposes **unless** it

provides for certain distribution options that apply after the death of any holder of the

contract.  Id.  Where a holder dies prior to the annuity starting date, the entire interest in

the contract must be distributed within 5 years of the death of the holder.  I.R.C.

§ 72(s)(1)(B).  An exception exists if any portion of the holder's interest is payable to a

designated beneficiary[1] and such portion will be distributed over the life of the designated

beneficiary (or not extending beyond the life expectancy of the designated beneficiary).

Id. at § 72(s)(2)(A) & (B).  However, under this exception, "such distributions [must]

begin not later than 1 year after the date of the holder's death or such later date as the

Secretary may by regulations provide."  Id. at § 72(s)(2)(C); see also I.R.S. Priv. Ltr. Rul.

201532026 (Aug. 7, 2015) (nonprecedential).  The time by which distributions to a

designated beneficiary making the election under § 72(s)(2)(C) must begin is fixed by the

statute and has not been extended by regulation.  See Griffin & Peak, supra at 47–48.

    According to North American, § 72(s) precludes Plaintiffs' ability to select the

contractual five-year equal periodic payment option because "the periodic payment

option cannot be selected after one year has passed since the annuitant's date of death,"

which did not happen here, given that Plaintiffs completed their final Claimant Statement

on March 29, 2023 (more than two years after Charles's death).  ECF No. 24 at 7; ECF

No. 18 at ¶ 77.  Indeed, North American pointed to this provision in July 2023 to explain

---

[1] A designated beneficiary includes "any individual designated a beneficiary by
the holder of the contract."  I.R.C. § 72(s)(4).

to the state insurance regulator why the five-year distribution option was not available.

ECF No. 18 at ¶ 81 (referencing ECF No. 18-39).

Plaintiffs initially asserted that the five-year distribution option is plainly allowed

under § 72(s)(1)(B), and the "one year rule" under § 72(s)(2)(C) kicks in if the payments

are to be made "over the life of the beneficiary," which Plaintiffs did not select here.

ECF No. 18 at 19–20.  However, in their response to the motion to dismiss, they

conceded: "Plaintiffs are not seeking periodic payments over 5 years, which would not

comport with the I.R.C., but rather are requesting the entire interest in the policy,

including the Rider Benefit Base Amount, to be fully distributed within 5 years of

Decedent's death."  ECF No. 27 at 2.

Plaintiffs have a variety of theories as to why they are nevertheless entitled to the

higher benefit amount, including that their election of the extended distribution option

was timely, that the § 72(s) requirements were not disclosed rendering the contract void,

and that North American unduly delayed their claims and the benefits distribution.  ECF

No. 18 at 18–20.  At this early stage, the court cannot declare as a matter of law that

Plaintiffs' claims lack plausibility without first allowing for further factual and legal

development on these claims.  See Naranjo v. Victor, 625 F. Supp. 3d 1140, 1147 (D.

Colo. 2022) ("[T]he Court finds that such an argument requires further factual

development and is improper for considering a Rule 12(b)(6) motion.").

## II.    Indemnification/Release Agreements

North American also claims that the Indemnification/Release Agreements bar this

suit because they establish that "Plaintiffs have accepted all liability as to any future

claims that may arise regarding the [Annuity] Contract." ECF No. 24 at 10. But, here too, it is premature to determine the intended scope of the Agreements' broad language absent further factual development. Plaintiffs allege that the Agreements were signed because they were "anxious" to receive their benefits and believed that the Agreements were only meant to clarify that Plaintiffs were the sole annuity beneficiaries. ECF No. 18 at ¶¶ 74–77; ECF No. 27 at 6. This is a plausible reading of the Agreements.

Indeed, the recitals preceding the release language illustrate North American's uncertainty as to the beneficiaries, suggesting that the Agreements might have been signed only as a way of agreeing upon the proper beneficiaries of the Annuity. See ECF No. 24-1. Without expressing an opinion on the scope of the Agreements, it is premature to accept North American's position that the releases also bar this suit which does not concern the identity of the proper beneficiaries, but rather addresses a separate question regarding the proper amount of benefits to which Plaintiffs are entitled. See Garrity v. Overland Sheepskin Co. of Taos, 917 P.2d 1382, 1390 (N.M. 1996) (suggesting that a release as to certain categories of claims might not operate as a release for other categories of claims); see also Hansen v. Ford Motor Co., 900 P.2d 952, 960 (N.M. 1995) ("We hold that a general release raises a rebuttable presumption that only those persons specifically designated by name or by some other specific identifying terminology are discharged."). It is indeed inappropriate at the motion-to-dismiss stage to decide the factual issues regarding the scope of the Agreements. See Am. Home Assur. Co. v. Cessna Aircraft Co., 551 F.2d 804, 807–08 (10th Cir. 1977).

### III.    Plaintiffs' Claims Survive the Motion to Dismiss

Having established that I.R.C. § 72(s) and the Indemnification/Release

Agreements do not warrant dismissal at this early stage, the court now turns to the rest of

Plaintiffs' claims which include: (1) breach of duty of loyalty and disclosure (Count I),

(2) negligent misrepresentation and fraudulent misrepresentation (Count II), (3) unjust

enrichment (Count III), (4) breach of contract and breach of the implied covenant of good

faith and fair dealing (Count IV), (5) violation of the New Mexico Insurance Code: N.M.

Stat. § 59A-16-6 and Unfair Insurance Practices Act (Count V), and (6) violation of the

unfair Trade Practices Act (Count VI).  ECF No. 18 at 23–37.

North American moves to dismiss all of Plaintiffs' claims.  ECF Nos. 23, 24.

With respect to Count I, it argues that New Mexico does not recognize such claims

independent of a bad-faith claim and, in the alternative, that Plaintiffs failed to allege the

existence of a fiduciary relationship.  ECF No. 24 at 11.  North American asserts that

Count II must fail because (1) there is no fiduciary relationship, (2) no alleged

misrepresentations occurred before the one-year deadline, and (3) Count II fails to satisfy

pleading standards.  Id. at 13–14, 20–21.  Regarding Count III, North American claims

that the unjust enrichment claim must be dismissed given the existence of an express

contract.  Id. at 16.  North American also argues that Count IV must be dismissed

because it acted reasonably under the contract and because no breach of contract

occurred.  Id. at 15–16, 19–20.  As to Count V, North American asserts that Plaintiffs

failed to allege "twisting" and that, in any event, such claims are time-barred.  Id. at 18–

19.  Finally, as to Count VI, North American claims that dismissal is required because

Plaintiffs failed to allege a cognizable claim and, in the alternative, that North

American's conduct falls under a safe-harbor provision. Id. at 17–18.

At this point, dismissal of the complaint based on these defenses would be

premature. Plaintiffs' claims center around the fact that Charles and Catherine paid for

an annuity benefits distribution option with higher monetary value (and presumably more

favorable tax treatment), only for North American to notify Plaintiffs years after

Charles's death that it was unavailable given I.R.C. § 72(s). See ECF No. 18 at 23–37.

As explained above, however, there are various threshold factual issues that affect the

ultimate viability of these claims including the application of distribution options, the

effect of I.R.C. § 72(s), and the scope of the Indemnification/Release Agreements.

Without further factual development on these issues, the court cannot confidently assess

Plaintiffs' other claims and thus finds it premature to dispose of those claims which —

accepting the well-pled factual allegations as true (and in the light most favorable to the

Plaintiffs) — are plausible on their face. See Twombly, 550 U.S. at 570; Iqbal, 556 U.S.

at 678; Am. Ass'n of People with Disabilities v. Herrera, 690 F. Supp. 2d 1183, 1220

(D.N.M. 2010) ("The Court should not resolve these factual disputes on a motion to

dismiss, but rather will allow Plaintiffs' claims . . . to go forward to allow further factual

development.").

## IV.    Plaintiffs' "Twisting" Claim is Dismissed

One exception to the above is Plaintiffs' claim that North American engaged in

"twisting" under § 59A-16-6 of the New Mexico Insurance Code. ECF No. 18 at 33–34

(Count V). That statute prohibits "misrepresenting or making misleading comparison[s]

as to the terms, conditions, benefits or advantages of any policy for the purpose of

inducing or attempting to induce any other person to lapse, forfeit, surrender, borrow

against, retain, exchange, convert or otherwise deal with or dispose of any policy."  N.M.

Stat. § 59A-16-6.  It encompasses situations where an insurer makes such misleading

statements "for the purpose of inducing or attempting to induce any other person to retain

or otherwise deal with any policy."  Sims v. First Am. Prop. & Cas. Ins. Co., No. 1:16-

cv-00870, 2017 WL 3610536, at *2 n.1 (D.N.M. Jan. 20, 2017).  The court agrees with

North American that Plaintiffs did not allege twisting here.  See ECF No. 18 at 34.  To

the extent Plaintiffs are relying on the 2016 transaction wherein their MassMutual

annuity was transferred to a North American annuity, such a claim would be time-barred.

See Castillo v. Allstate Prop. & Cas. Ins. Co., No. 1:22-cv-0968, 2023 WL 5628142, at *

6 (D.N.M. Aug. 31, 2023).  As appropriate here, "a statute of limitations defense may be

appropriately resolved on a Rule 12(b) motion when the dates given in the complaint

make clear that the right sued upon has been extinguished."  Herrera v. City of Espanola,

32 F.4th 980, 991 (10th Cir. 2022) (quotations omitted).  The § 59A-16-6 "twisting"

claim is therefore dismissed.

NOW, THEREFORE, IT IS ORDERED that Defendant North American

Company for Life and Health Insurance's Motion to Dismiss Plaintiffs' First Amended

Complaint filed March 15, 2024 (ECF No. 23) is granted insofar as dismissal of Count V

"twisting" claim under §  59A-16-6 of the New Mexico Insurance Code.  In all other

respects, the Motion is denied.  Defendant has 14 days from the entry of this order to file

an answer to Plaintiffs' First Amended Complaint.  Fed. R. Civ. P. 12(a)(4)(A).

DATED this <u>11th</u> day of March 2025, at Santa Fe, New Mexico.


<u>/s/ Paul Kelly, Jr.</u>
United States Circuit Judge
Sitting by Designation

Counsel:
May Dozier-Reed and Vanessa L. DeNiro, DeNiro Law, LLC, Rio Rancho, New Mexico
for Plaintiffs

Jesse Linebaugh, Faegre Drinker Biddle & Reath, LLP, Des Moines, Iowa for Defendant.